MAROLLA, Respondent, v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.

*February 29—April 9, 1968.*

From this judgment American Family Mutual Insurance Company appeals.

For the appellant there was a brief and oral argument by *H. E. Koehler* of Shawano.

For the respondent there was a brief and oral argument by *Orville S. Luckenbach* of Shawano.

BEILFUSS, J. The appellant concedes that credible evidence before the jury is sufficient to sustain the verdict. It also concedes that the railroad company's safety rule and the alleged custom are not direct evidence of negligence but that the safety rule and the custom are material evidence upon which the jury could base an inference of the degree of culpability of the plaintiff which, in turn, could have affected the jury's answers to the comparative negligence question. It is upon this thesis that the appellant-insurer claims prejudicial error.

The part of the railroad rule which the appellant contends should have been admitted is as follows:

"In passing over public crossings, track cars are to be handled in the following manner:

"(a) Approach crossings under complete control.

"(b) Stop if necessary."

An exhaustive summarization of the cases on the subject in 50 A. L. R. 2d 16 *et seq.,* illustrates there is a divergence of opinion among the various jurisdictions on the admissibility of railroad promulgated rules of safety and operation. The annotation, titled *Admissibility in evidence of rules of defendant in action for negligence,* notes cases from 25 states and from the federal courts. This collection of authority indicates that approximately three-fourths of the jurisdictions which have passed on the question admit such rules in evidence pursuant to proper instruction and limitation. Most of the cases in the area involve suits against the railroads themselves for the negligent actions of its employees. The objective of the appellant in the case at bar is an attempt to establish contributory negligence on the part of the plaintiff-railroad employee to reduce his recovery from the appellant, the insurer of an automobile driver. However, the reasoning of the cases is substantially applicable in the case at bar albeit some of the considerations of public policy for exclusion might be somewhat different.[2]

The reasoning of the courts which exclude rules of company safety and operation is probably best described in *Fonda v. St. Paul City Ry.* (1898), 71 Minn. 438, 74 N. W. 166, "which has been frequently referred to as a leading case in support of the rule of exclusion." 50 A. L. R. 2d 26 states:

". . . a person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common. Such rules may require more, or they may require less, than the law requires; and whether a certain course of conduct is neg-

---

[2] One argument frequently levied against the admission of the rules against a company is that the admission of such rules against an employer tends to discourage the adoption of such rules. (*Bryan v. Southern Pacific Co.* (1955), 79 Ariz. 253, 286 Pac. 2d 761, citing *Longacre v. Yonkers R. R.* (1923), 236 N. Y. 119, 140 N. E. 215.)

ligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party. . . ."

The rationale of the cases which admit these rules in evidence is expressed well in *Hurley v. Connecticut Co.* (1934), 118 Conn. 276, 283, 172 Atl. 86:

"Without adopting in its entirety the reasoning in some of these decisions, we hold that the requirements imposed by the company upon its motormen serve at least to show what the former considers necessary or desirable for the protection of the public, and whether the motorman observed or violated these rules is certainly some evidence as to whether his conduct was that of a reasonably prudent motorman under the circumstances."

Among the cases which constitute the majority view there is a wide divergence as to exactly what the safety regulation will be admitted to prove. Some of the decisions go so far as to conclude the rules are to be treated like ordinance or other public regulations.[3] Others treat them as declarations against interest.[4] However, the most common view [5] is that if they are admitted they should be admitted for the purpose of indicating the care required under the circumstances but not taken as conclusive of any standard of care. Some courts consider such rules "part of the *res gestae* inseparably connected with the accident as one of the circumstances surrounding the case, and which are often necessary to a proper understanding of the same." *Cincinnati Street Railway Co. v. Altemeier* (1899), 60 Ohio St. 10, 19, 53 N. E. 300, 50 A. L. R. 23. This view, it is submitted, is not significantly different from the most common view.

There is only one Wisconsin case close in point and it appears to be in accord with the rule of exclusion.[6] In the

---

[3] 50 A. L. R. 2d 22, footnote 9.

[4] 50 A. L. R. 2d 22, footnote 10.

[5] 50 A. L. R. 2d 20, 21.

[6] The only other Wisconsin case cited by the parties involving the admissibility of such rules is *Bassett v. Milwaukee Northern*

case of *Otto v. Milwaukee Northern Ry.* (1912), 148 Wis. 54, 134 N. W. 157, the trial court had admitted in evidence a rule of the railroad which provided the servant of the company should exercise the highest degree of care in handling cars to avoid injuring themselves or others.[7] The plaintiff had been injured when she fell while assisting some relatives board an electric railway car when the car started forward with a jerk. Concerning the railroad company's safety rule, the court said:

"Obviously, that had nothing to do with the case. The law, not any rule of the company, was the test of defendant's duty. Moreover, no such duty as that indicated by the rule, is legally required as regards a mere licensee. Why the trial court permitted the introduction of a matter so very foreign to the case, is not perceived." (p. 59.)

We agree that the admission of the rule in *Otto v. Milwaukee Northern Ry., supra,* by the trial court was prejudicial error. The rule did nothing to explain the ordinary operations of the railroad to the jury. It did nothing to explain the circumstances of the accident.

In support of the cases that hold it should be within the discretion of the trial court to admit the company rule is the theory that the rule may assist the jury in determining whether the conduct of the actor was negligent under the circumstances then and there existing.

---

*Ry.* (1919), 169 Wis. 152, 170 N. W. 944. In this case a rule of a railroad company which proscribed passengers riding in the motorman's compartment of the railway car was held inadmissible. A passenger was injured when the car collided with another car when he was riding in the motorman's compartment. The case is inapposite because the rule was introduced on behalf of the railroad in an attempt to prove the contributory negligence of the injured passenger by his violation of the rule. The court held the passenger could not be charged with negligence for violation of a rule which was not proved to be for the safety of passengers and of which the passenger had no knowledge.

[7] "Every employee is required to exercise the utmost caution and avoid injuries to himself or others, especially in the switching or other movement of cars and trains." Appellant's brief, p. 23, *Otto v. Milwaukee Northern Ry., supra,* Cases & Briefs, Vol. 1027.

The test of negligence is the failure to exercise ordinary care. This is well explained in Wis J I—Civil, Part I, 1005:

"Negligence may also be said to mean a want of, or failure to exercise that care and caution which a person of ordinary intelligence and prudence usually exercises in a like or similar situation, work, or operation, under like or similar circumstances."

The test in the case at bar was not what the ordinary prudent man would do if he were driving a track car but what the ordinary prudent man would do if he were an average or ordinary track car driver. The "ordinary man" cannot be divorced from "like or similar circumstances."

This is apparently what the Kentucky court had in mind in 1964 when, in *Current v. Columbia Gas of Kentucky* (Ky. 1964), 383 S. W. 2d 139, 143,[8] it overruled its previous position with regard to the admissibility of such rules:

"On the other hand, it is suggested that a jury has no standard whereby to measure the conduct of a highly specialized business. It may be questioned that a jury of laymen can intelligibly gauge the degree of care usually exercised by an ordinarily prudent man when that mythical actor is engaged in conduct utterly beyond the ken of the juror. For example, which of us could know what an ordinarily prudent astronaut would do in a space flight—or how should we evaluate the conduct of an ordinarily prudent man on the moon? It is our conclusion such rules should be admitted in cases posing the standard of care required in activities not within the general realm of common experience."

While it is readily granted that the intricacies of the space flight alluded to by the Kentucky court would tend to require more explanation to a jury than the operation

[8] *See Cedarburg Light & Water Comm. v. Allis-Chalmers* (1967), 33 Wis. 2d 560, 568a, 148 N. W. 2d 13, 149 N. W. 2d 661, opinion on rehearing.

of a track car through Morgan Siding, still, it is submitted, the operation of a track car is an activity which is not within the general realm of common experience.

The reasoning which concludes that admission of company rules should be left to the discretion of the trial court has much to commend it. There are, however, other considerations which lead us to the conclusion that company rules of safety and operation should not be admitted in litigation against noncompany parties.

In addition to reasons set forth in *Otto v. Milwaukee Northern Ry.*, *supra*, and *Fonda v. St. Paul City Ry.*, *supra*, we believe it evident that the company, in this instance an employee of the company personally, may be subjected to different standards of liability for essentially the same act. To illustrate, let us suppose that Marolla was operating the exact type of track car under the identical circumstances a mile farther down the highway, but on the tracks of a company that did not have any safety rule or one that made it an absolute duty to stop. Should Marolla's liability to a user of the highway be different in any of the three situations? To ask the question is to answer it. Of course it should not. In reality the question is, what would an ordinary prudent railroad employee do under the same or similar circumstances? The answer should not be dependent in any degree on whether a Soo Line employee has violated a company rule. If it could be shown that an entire industry or substantially an entire industry had essentially the same safety regulations, we would be confronted with a different problem, but that problem is not before us.

We conclude it was not error to sustain the objection to the appellant's offer of the company rules into evidence.

We now consider whether it was error to sustain an objection to an offer to prove custom. The offer of proof as it appears in the record is as follows:

"*Mr. Koehler:* In conjunction with the further cross-examination of this witness it is proposed to ask him whether he knew it to be the custom of track car operators of the Soo Line Railroad, at the time of the accident, to stop at highway crossings when a car is approaching; and that the answer of this witness is that such was then the custom."

Again it can be said that the objection should be sustained because the offer of proof limits itself to the custom of the Soo Line employees and for the same reasons as set forth above dealing with company rules. However, if we treat the words "Soo Line Railroad" as surplusage we are confronted with a different problem.

If the offer of proof can be read to mean that that is the custom of substantially all operators of railroad track cars to stop before crossing a highway in areas similar to the one in question, then it would have been error to sustain the objection to the proof offered.

"It is true that compliance with a customary practice furnishes evidence of due care, and that failure to comply with a customary practice may be the basis for an inference of negligence. It is generally held that it can have no greater effect than this. In *Cadillac Motor Car Co. v. Johnson,* 221 Fed. 801, it is stated:

" 'The common usage of the business is a test of negligence, but not a conclusive or controlling test. . . . Such evidence is received for what it is worth, in view of all the circumstances of the particular case, and under proper instructions from the court as to its inconclusive nature the jury has the right to give it such consideration as they think it should receive in connection with all the other facts.'

"While there are authorities to the effect that failure to follow a custom may constitute negligence, the doctrine is virtually restricted to cases in which no inference other than negligence can reasonably be drawn from the conduct which constitutes a departure from custom.

" 'A custom, the failure to observe which will constitute negligence, must be certain, uniform, and invariable, and must also be notorious and known to all persons of intelligence having to do with the subject to which it

relates.' *Fogarty v. Michigan Cent. R. Co.* 180 Mich. 422, 147 N. W. 507." *Sprecher v. Roberts* (1933), 212 Wis. 69, 74, 75, 248 N. W. 795.

However, the "custom" appellant attempted to have introduced stated no more than the common law and hence it was not prejudicial error to exclude it in view of the instruction given by the court.

Pertinent instructions given were as follows:

"It is the duty of every driver of an automobile and every operator of a track car to exercise ordinary care to keep his automobile or track car under proper control, so that when dangers appear he may stop his automobile or track car, reduce the speed of it in the case of an automobile driver, to change his course, and both are under obligation to take such other means to avoid injury or damage as may appear reasonably proper and feasible. This does not mean that a man should so operate his automobile or operate a track car as to avoid all accidents, but they are required, each of them, to exercise that degree of care in the control and management of their automobile or track car as would be exercised by the ordinarily prudent and careful driver or operator under the same or similar circumstances. . . .

"So far as the law applies to Mr. Marolla, as the operator of the track car, you are instructed that while there is no specific rule regulating the speed of track cars operating on railroad tracks, you are instructed that it is the general duty of an operator of a track car to operate his car at such speed as would be reasonable or prudent under the conditions and having regard for the actual and potential hazards then existing. The speed of the car should be so controlled as may be necessary to avoid colliding with any object, person or vehicle and in crossing the highway intersection in compliance with legal requirements and using due care. The operator of a track car shall drive at an appropriate reduced speed when approaching and crossing a highway intersection or when special hazards exist with respect to competing traffic on the highway intersection or by reason of weather or track conditions."

The jury was given accurate instructions on the common-law duty of the track car operator. From a review

of the entire record we are not convinced it is probable that a different result would have been reached by the jury if the evidence of custom had been received in the evidence. The error, if it be error, was harmless under sec. 274.37, Stats.

*By the Court.*—Judgment affirmed.