SHIBILSKI, Individually and as Special Administrator of Estate of Bonnie K. Shibilski, Deceased, Plaintiff-Respondent, v. ST. JOSEPH'S HOSPITAL OF MARSH-FIELD, INC., Defendant-Appellant: MARSHFIELD CLINIC, Defendant.

*No. 75–774. Argued March 6, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 264.)

For appellant there was a brief by *Fulton, Menn & Nehs, Ltd.*, and oral argument by *David Fulton*, all of Appleton.

For respondent there was a brief by *Glinski & Haferman*, and oral argument by *Herman J. Glinski*, all of Stevens Point.

BEILFUSS, C. J. This action was commenced on August 14, 1974, by service of summons on defendants, St.

Joseph's Hospital of Marshfield, Inc., and the Marshfield Clinic. A complaint was filed on November 25, 1974, by James F. Shibilski, individually and as special administrator of the Estate of Bonnie K. Shibilski, deceased, claiming damages for her alleged wrongful death.

Bonnie K. Shibilski was admitted to St. Joseph's Hospital on August 28, 1971, for the delivery of her third child. She had previously been hospitalized at St. Joseph's on at least three occasions since 1963 for psychiatric illnesses. After the birth of this child she was transferred to the psychiatric ward.

On September 2, 1971, at approximately 1 p.m., while Bonnie K. Shibilski was locked in a room in the psychiatric ward of St. Joseph's, a fire broke out in her room resulting in second and third degree burns over 95 percent of her body which led to her death on September 18, 1971. Apparently she had been given a lighted cigarette by a hospital employee shortly before the fire. When the fire was discovered, Bonnie Shibilski resisted attempts at rescue.

The complaint alleged negligence in several respects, including confining Bonnie in a room with flammable and nonflame retardant furnishings and linen; lack of a sprinkler system and smoke or flame detector system; failure to keep Bonnie under constant supervision; failure to train and instruct hospital personnel in handling safety and emergency situations; and failure to establish rules and regulations for dealing with patients like Bonnie Shibilski.

On October 20, 1975, plaintiff James Shibilski filed a motion for the production of documents and to require the defendants to answer certain questions which had been certified at various depositions previously held. The defendants offered two affidavits in opposition to these motions. The affidavit of David R. Jaye, formerly the Administrator and now President of St. Joseph's, opposed *inter alia* the discovery of rules and regulations

of the hospital and accreditation standards. He stated that this information was intended to be confidential and that disclosure of such information would prevent full and unfettered discussion of hospital problems by the various hospital committees in the future. The affidavit of St. Joseph's attorney, John B. Menn, stated that he was retained by St. Joseph's and its insurer on October 11, 1971, and that various reports and statements, sought by the plaintiff, were immune from discovery by reason of the attorney work-product privilege.

On October 16, 1975, the trial court issued a written document entitled "Ruling on Plaintiff's Motions," wherein the plaintiff's motions were, for the most part, granted. By notice of appeal dated April 1, 1976, the defendant, St. Joseph's Hospital, appealed from this October 16th document. Then on April 14, 1976, the trial court issued an order specifically granting various portions of the plaintiff's October 20, 1975 discovery motions. An amended notice of appeal from this order was thereafter served and filed by St. Joseph's.

Defendant, Marshfield Clinic, is not a party to this appeal.

The following four issues stated in capsulized form are raised on this appeal:

I. Are hospital rules and regulations discoverable?

II. Are hospital committee reports privileged?

III. Does the attorney work-product privilege bar discovery?

IV. Were certain questions which the trial court ordered answered irrelevant?

The first challenge leveled by appellant against the trial court's discovery rulings is against the demand for evidence of rules and regulations adopted by the hospital applicable to the operation of the psychiatric ward. Specifically, the trial court ordered that the hospital furnish the plaintiff with copies of any rules and regulations of the hospital applicable to the psychiatric ward pertaining to fire drills and the training and education of

personnel to deal with fires. Also, the trial court ordered that the assistant administrator and administrator of the hospital answer the questions certified at their depositions as to whether the hospital had adopted any accreditation standards or rules or regulations pertaining to the operation of its psychiatric ward.

Appellant contends that any rules, regulations, or standards adopted by the hospital are irrelevant and inadmissible; that generally, rules and regulations adopted by private organizations are irrelevant because the standard of care upon which recovery must be based is set by law. In *Marolla v. American Family Mut. Ins. Co.*, 38 Wis.2d 539, 157 N.W.2d 674 (1968), this court affirmed a trial court refusal to admit a railroad safety rule in a case involving a collision between a motorized railway track car and an automobile. The action was brought by the operator of the track car against the automobile operator. The trial court refused to admit evidence proffered by the defendant's insurer of a safety rule adopted by the railroad relating to the stopping of track cars at highway crossings. We held that company rules of safety and operation should not be admitted in litigation against noncompany parties because to do so could result in holding an employee of one railroad company to a higher standard of care on the basis of more stringent company rules than an employee of another railroad with less stringent private standards.

It is the hospital's position that *Marolla* holds that rules and regulations of the sort sought by Shibilski are inadmissible and, therefore, not discoverable. The hospital's reliance on *Marolla* is misplaced. *Marolla* dealt with admissibility, not discovery. Admissibility relates to the actual admission of documents or statements into evidence. Discovery, on the other hand, although it has a purpose of finding admissible evidence, does not imply that that which is discovered is always to be introduced as evidence. Rather,

"Pretrial discovery is designed to formulate, define and narrow the issues to be tried, increase the chances for settlement, and give each party opportunity to fully inform himself of the facts of the case and the evidence which may come out at trial." *State ex rel. Dudek v. Circuit Court,* 34 Wis.2d 559, 576, 150 N.W.2d 387 (1967).

Therefore, even if the evidence the plaintiff seeks was inadmissible, this does not necessarily prevent discovery. If the rules and regulations are relevant to the case in some way, they should be discoverable. Relevant evidence is defined in the Wisconsin Rules of Evidence, sec. 904.01, Stats., as follows:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Respondent contends that these rules and regulations could be valuable in determining whether hospital personnel were properly trained or instructed. The rules and regulations could be relevant to show lack of conformity with minimum standards accepted by the hospital industry as a whole. As noted in *Marolla,* citing Wis J I—Civil, Part I, 1005:

" 'Negligence may also be said to mean a want of, or failure to exercise that care and caution which a person of ordinary intelligence and prudence usually exercises in a like or similar situation, work, or operation, under like or similar circumstances.' " 38 Wis.2d at 546.

Thus, were the instant rules and regulations of the hospital shown to be less stringent than those accepted by other hospitals as minimum requirements, they would be relevant to the issue of negligence.

We conclude the rules and regulations sought by the plaintiff are discoverable.

The next orders and rulings challenged by St. Joseph's relate to medical staff or hospital staff committee meetings which might have taken place after the fire.

The trial court, among other things, ordered that reports made by employees or by doctors relating to the investigation of the fire be furnished to the plaintiff. Also, the court ruled that various administrative, nursing, and staff personnel answer the questions certified at their depositions relating to whether they had attended or participated in any post-fire official or nonofficial hospital committee or staff meetings relating to the care and treatment of Bonnie Shibilski on September 2, 1971, or discussing the fire. The hospital contends that these meetings were intended to be confidential and are privileged.

St. Joseph's places primary reliance upon two cases from other jurisdictions. *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C. 1970), *affirmed*, 479 F.2d 920 (D.C. Cir. 1973), and *Oviatt v. Archbishop Bergan Mercy Hospital*, 191 Neb. 224, 214 N.W.2d 490 (1974). Both cases hold that confidentiality of committee reports and meetings is in the best interests of the public because only with a complete assurance of confidentiality can the free and unfettered discussion and evaluation necessary to improving medical care take place. But cases from other jurisdictions have held that hospital committees are not cloaked with a privilege of confidentiality. *Nazareth Literary & Benevolent Institution v. Stephenson*, 503 S.W.2d 177 (Ky. 1973) ; *Young v. King*, 136 N.J. Super. 127, 344 A.2d 792 (1975).

Very recently this court resolved this issue. In *Davison v. St. Paul Fire & Marine Ins. Co.*, 75 Wis.2d 190, 248 N.W.2d 433 (1977), we held that no privilege existed to protect hospital committee reports from discovery. In *Davison*, a malpractice action, the plaintiffs sought all notes, records, correspondence, reports, or memoranda

produced by or for several hospital committees concerning the care and treatment of the plaintiff by her physician. The hospital claimed that the material was privileged.

This court rejected all three bases presented to support the claimed privilege. We rejected the existence of a statutory privilege and noted that privileges and confidentialities created by statute must be strictly construed. Additionally, we cited *United States v. Nixon*, 418 U.S. 683, 709–10 (1974), to the effect that whatever the origin of a privilege, be it constitutional, statutory, or common law—

" '. . . these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' " 75 Wis.2d at 199.

As in *Davison*, St. Joseph's in the instant case cites a portion of the Wisconsin Administrative Code as a basis for its claim of privilege. In *Davison* here again there is no showing of the existence of any statutory privilege.[1]

The second basis presented in *Davison* was an alleged common law privilege. We held that there was no common law privilege to protect a hospital's committee reports or memoranda, and that even if there were its recognition was precluded by sec. 905.01, Stats.[2]

---

[1] *Davison* noted that sec. 146.38, Stats., which might have provided a statutory privilege, was not to be applied retroactively. 75 Wis.2d at 200. That statute is inapplicable in this case also, inasmuch as the committee reviews here were held, the demand for discovery was made, and the trial court's ruling, later reduced to the order appealed from, was made, all prior to the effective date of sec. 146.38, Stats. (1975).

[2] "905.01 *Privileges recognized only as provided.* Except as provided by or inherent or implicit in statute or in rules adopted by the Supreme Court or required by the constitution of the United States or Wisconsin, no person has a privilege to:

Finally, in *Davison,* this court considered arguments that it should judicially create such a privilege. We noted the existence of the case of *Bredice v. Doctors Hospital, Inc., supra,* but specifically refused to judicially create such a privilege. We again decline to do so.

There is no privilege against discovery of hospital committee records and reports as claimed by St. Joseph's.

The hospital next contends that certain of the documents requested by the plaintiff are barred from discovery by the attorney work product privilege. Three of the requests concern demands for reports made to the defendant-appellant's insurance company. The other requests are for reports and statements made by doctors and hospital employees concerning the fire. The trial court ordered that the plaintiff be furnished with statements of the doctors and employees who were present at the time of the fire or who arrived on the scene immediately after the discovery of the fire. Also, the court ruled that copies of reports made by employees or by doctors relating to the investigation of the fire be furnished to the plaintiff. Additionally, the court ordered that the plaintiff receive copies of reports made by the hospital to its insurance company shortly after the fire and ruled that the assistant administrator and administrator produce copies of their reports to the hospital's insurance company regarding the fire.

In *State ex rel. Dudek v. Circuit Court, supra,* this court noted that while the liberal rules of pretrial discovery were meant to facilitate the proper working of the adversary system, they could not be allowed to under-

---

"(1) Refuse to be a witness; or

"(2) Refuse to disclose any matter; or

"(3) Refuse to produce any object or writing; or

"(4) Prevent another from being a witness or disclosing any matter or producing any object or writing."

cut the lawyer's incentive to thoroughly investigate all angles of a case:

"Accordingly, we shun any rule which would tend to encourage indolence or lying back in pretrial investigation or which would tempt an attorney to unfairly conceal the results of investigations they have made." 34 Wis.2d at 577.

The court quoted extensively from the United States Supreme Court case of *Hickman v. Taylor,* 329 U.S. 495 (1947), and stated:

"From *Hickman,* as quoted above, we conclude that a lawyer's work product consists of the information he has assembled and the mental impressions, the legal theories and strategies that he has pursued or adopted as derived from interviews, statements, memoranda, correspondence, briefs, legal and factual research, mental impressions, personal beliefs, and other tangible or intangible means.
"This broad definition of lawyer's work product requires that most materials, information, mental impressions and strategies collected and adopted by a lawyer after retainer in preparation of litigation and relevant to the possible issues be initially classified as work product of the lawyer and not subject to inspection or discovery unless good cause for discovery is shown." 34 Wis.2d at 589.

In *Dudek* we expressly refused to limit the work product privilege to an attorney's subjective mental processes.

St. Joseph's bases its work product claim on the affidavit of its attorney, John B. Menn, to the effect that he was retained by the hospital little more than one month after the fire and informed that he was in charge of all legal matters arising out of the fire. It is also asserted in this affidavit that all statements, investigations, meetings, reports, etc., done or made after Attorney Menn's retainer were under his direction and control, and that all statements, investigations, meetings and reports prior to the retainer were made or done in anticipation of litigation.

As the above quotation from *Dudek* reveals, an attorney's work product includes not only work actually done by him, but also work adopted by the attorney. This was further explained in *State ex rel. Shelby Mut. Ins. Co. v. Circuit Court,* 67 Wis.2d 469, 475, 228 N.W.2d 161 (1975) :

"The term 'adopted' clearly refers to the 'materials, information, mental impressions and strategies' of others which the lawyer assimilates as part of his own work product."

In *Shelby* we held that reports prepared by experts consulted by an insurance company became work product when an attorney assumed the file of the case. However, in the instant case, no experts are involved. At least none are referred to. Rather the reports here appear to be routine and fall directly within the following language from *Dudek*, p. 592 :

"It is almost universally held that a party's routine report to his employer or insurer which report happens to find its way into the files of the employer's or insurer's attorney is not protected work product."

Even if the reports here are not considered routine, and even if they were prepared in anticipation of litigation, it is apparent that the showing of good cause necessary to release the reports is less than normally required. In *Dudek* we noted that statements of witnesses taken by nonlawyers were encompassed in the work product of the adopting attorney, but that in such a case the court should require a lesser showing of good cause than if the statements had been taken by the attorney himself. Thus, these reports, none of which involve attorneys but which Attorney Menn claims were later adopted by him,

do not require a great showing of good cause in order to be released to the plaintiff.

In *Dudek* we stated that whether good cause for discovery of work product was presented was a matter of discretion for the trial court. We stated that good cause required that the party moving for discovery make an adequate showing that the information classified as work product is unavailable from other sources, and that denial of discovery would prejudice the movant's preparation for trial. The particular facts and circumstances of the case, as well as the reason for declaring the information work product, are to be considered.

In this case the decision of the trial court shows that it applied the criteria set forth in *Dudek* in order to reach its conclusion that Shibilski had presented good cause for overcoming the privilege. The trial court noted that alternative sources for the information were not available and that lack of the material might prejudice Shibilski's case. St. Joseph's does not allege that the trial court abused its discretion by ordering discovery. Although the hospital does imply that the information was available from other sources and that lack of such information would not prejudice Shibilski's case, these assertions are not bolstered by any facts or evidence. St. Joseph's has not presented this court with any reasons to overturn this discretionary trial court order.

The final challenge asserted by the hospital is that it was error to require hospital employees and doctors to answer certain questions propounded at various depositions held in this case. The hospital claims the answers would be irrelevant.

The right to discovery only extends to material relevant to the subject matter involved in a pending action.[3] The

[3] *State ex rel. Rilla v. Dodge County Circuit Court,* 76 Wis.2d 429, 435, 251 N.W.2d 476 (1977); sec. 804.01(2)·(a), Stats., formerly sec. 877.12(2).

standard of review again is whether the trial court abused its discretion. Furthermore, the appellant has the burden of showing such abuse.[4]

■

We conclude the appellant has failed to show that the trial court abused its discretion in requiring the various witnesses to answer the questions. Giving the twelve rulings now challenged by the hospital the liberal construction mandated in discovery efforts, we conclude that all of them are relevant to the case against St. Joseph's.

We conclude the appellant has presented no basis for reversal. Hospital rules and regulations are discoverable and may be admissible. There is no hospital committee privilege applicable in this case. The attorney work product privilege either does not apply because these were routine reports, or is overcome by good cause. Finally, the questions asked of the various deponents are relevant to the controversy.

*By the Court.*—Order affirmed.

[4] *Shier v. Freedman,* 49 Wis.2d 41, 43, 181 N.W.2d 400 (1970); *Fanshaw v. Medical Protective Asso.,* 52 Wis.2d 234, 240, 190 N.W. 2d 155 (1971).