In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3943 & 01-1040

Lisa Cooper, Individually and as Independent
Administrator of the Estate of Matthew Patrick
Cooper, Deceased, and Gary Cooper, Individually,

Plaintiffs-Appellants,

v.

Eagle River Memorial Hospital, Inc., and
Wisconsin Patients Compensation Fund,

Defendants-Appellees.

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 99-C-722-C--Barbara B. Crabb, Chief Judge.

Argued September 26, 2001--Decided October 25, 2001

Before Flaum, Chief Judge, and Coffey and
Manion, Circuit Judges.

Flaum, Chief Judge.  Lisa Cooper sued
Eagle River Memorial Hospital ("Eagle
River") for medical malpractice on behalf
of her deceased son. A jury returned a
verdict in favor of Eagle River, and
Cooper appeals several alleged errors at
trial. For the reasons stated herein, we
affirm.

I.  Background

On June 6, 1998, Cooper, who was
approximately 30 weeks pregnant, was
vacationing in Eagle River, Wisconsin.
Cooper experienced severe cramping in her
lower abdomen and visited Eagle River for
treatment. At the hospital, Diego Perez,
a nurse practitioner, administered an
internal examination and diagnosed Cooper
with mild dehydration and mild
hypoglycemia. Perez subsequently
discharged Cooper.

Cooper's pain worsened following her
discharge from Eagle River. Accordingly,
she visited the Howard Young Medical
Center ("Howard Young"), where treating
physicians performed an emergency
Cesarian section and delivered Cooper's

son, Matthew. Matthew's condition at birth required an emergency transfer from Howard Young to the Marshfield Clinic. Eight days later, Matthew died.

On November 15, 1999, Cooper filed a medical malpractice lawsuit against Eagle River and other defendants. Cooper alleged that Eagle River was negligent for failing to arrange for a physician consultation, failing to conduct standard medical monitoring procedures, and failing to immediately transfer Cooper to Howard Young. The case proceeded to a jury trial. At trial, Cooper offered testimony of several experts on the issues of liability and causation. In defense, Eagle River presented expert testimony from Dr. Nancy Ness, a family physician, regarding the appropriate standard of care for nurse practitioners. Eagle River also relied on expert testimony from Dr. Janice Lage, who examined a pathology slide containing samples of Cooper's placenta tissue and testified as to the cause of Cooper's placental abruption./1

After the close of evidence, Cooper asked the court to instruct the jury that Eagle River may be liable under a negligence per se theory because Eagle River allegedly violated two provisions of the Wisconsin administrative code. The first requires nurse practitioners to consult with physicians via telephone; the second requires hospitals to maintain policies and procedures regarding emergency care. The trial court declined to issue the negligence per se instruction and prohibited Cooper from introducing the provisions into evidence.

The jury returned a verdict in favor of Eagle River, and Cooper filed a notice of appeal. Subsequent to that filing, Eagle River moved the clerk of the district court to award costs pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. sec. 1920. Magistrate Judge Joseph Skupniewitz, who is also the clerk of the court in the Western District of Wisconsin, considered the matter and awarded Eagle River $17,697.65 in costs. Cooper filed a timely notice of appeal from the cost award, and this court consolidated the two appeals.

Cooper raises five issues on appeal. First, Cooper argues that the district

court should have allowed her to present to the jury a liability theory based upon negligence per se. Second, Cooper maintains the district court should have allowed her to offer into evidence Eagle River's operating procedures and policies regarding emergency obstetrical care. Third, Cooper claims the district court erred in introducing the testimony of Dr. Ness, a family physician who testified as an expert regarding the appropriate standard of care for nurse practitioners. Fourth, Cooper contends that the district court erroneously admitted a pathology slide that Eagle River failed to authenticate. Finally, Cooper appeals the imposition of costs.

II.  Discussion

A.  Standard of Review and Choice of Law

In each of the issues raised by Cooper, we review the district court's rulings under the abuse of discretion standard. See Stuart Park Assoc. Ltd. Partnership v. Ameritech Pension Trust, 51 F.3d 1319, 1323 (7th Cir. 1995) (jury instructions); United States v. Romero, 57 F.3d 565, 570 (7th Cir. 1995) (admission of expert testimony reviewed under a manifestly erroneous standard). "The abuse of discretion standard means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge;" rather, the district court's decision must strike us as fundamentally wrong. Ladien v. Astrachan, 128 F.3d 1051, 1056 (7th Cir. 1997), quoting Anderson v. United Parcel Serv., 915 F.2d 313, 315 (7th Cir. 1990) (internal citations and quotations omitted). Furthermore, the parties generally agree that Wisconsin law governs all substantive issues in thisdiversity suit, although federal law applies to procedural matters. See Pro Football Weekly, Inc. v. Gannett Co., 988 F.2d 723, 727 (7th Cir. 1993).

B.  Negligence Per Se Instruction

Cooper first argues that the district court erred in refusing to provide the jury with a negligence per se instruction based upon Eagle River's alleged violation of two provisions of the Wisconsin administrative code. The first is Wisconsin Administrate Code N. 8.10 (2) ("Number 8.10 (2)"), which states:

Advanced practice nurse prescribers shall facilitate collaboration with other health care professionals, at least one of whom shall be a physician, through the use of modern communication techniques.

The second, Wisconsin Code HFS sec. 124.01 ("Section 124.01") requires hospitals to maintain "written policies for caring for emergency cases, including policies for transferring a patient to an appropriate facility when the patient's medical status indicates the need for emergency care which the hospital cannot provide." Because Nurse Practitioner Perez failed to consult with a physician during Cooper's treatment, and because Eagle River failed to maintain the necessary written policies governing emergency care, Cooper asserts that a negligence per se instruction was appropriate.

Under Wisconsin law, negligence per se instructions are appropriate in a narrowly defined range of circumstances. Specifically, a per se instruction is warranted only when the defendant has violated a "safety statute." To prove that a legislative enactment is a safety statute, a plaintiff seeking a negligence per se instruction must establish three facts:

(1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability.

Antwaun A. v. Heritage Mut. Ins. Co., 596 N.W.2d 456, 466 (Wis. 1999); Betchkal v. Willis, 378 N.W.2d 684, 687 (Wis. 1985). The Wisconsin courts have interpreted this last requirement narrowly; only when the legislature unambiguously demonstrates an intent to alter the common law standards will a negligence per se instruction be appropriate. Walker v. Bignell, 301 N.W.2d 447, 454-55 (Wis. 1984); Leahy v. Kenosha Memorial Hospital, 348 N.W.2d 607, 612 (Wis. Ct. App. 1984). In distinguishing "safety statutes" from more general regulatory measures, plaintiffs must do more than baldly assert that the statute in question protects a specific class of

individuals. All legislation promotes the public welfare to some degree. Instead, the legislation must evince a clear and unambiguous legislative desire to establish civil liability. Leahy, 348 N.W.2d at 612.

In Leahy, the plaintiff's evidence included a Wisconsin statute that defined the practices of professional nursing and practical nursing. Plaintiff argued that the defendant-hospital violated the statute because the individuals caring for the plaintiff were not registered nurses as defined by the law. Based on this testimony, the trial court included a negligence per se instruction, and the jury found for the defendant liable of medical malpractice. Leahy, 348 N.W.2d at 609.

In reversing the jury verdict, the Wisconsin Court of Appeals held that a statute regulating the nursing profession and providing for the licensing of nurses was not a safety statute and did not evince a legislative intent to create new standards for civil liability. Id. at 612. Specifically, the court held that the statute served three clear purposes: regulation of the nursing profession; licensure of nurses; and establishment of penalties for violations. Id. While the law ensured public safety generally, nothing in the act revealed "a legislative intent to grant a private right of action for a violation of the statute." Id.

The Leahy court rejected the appropriateness of the negligence per se instruction because it improperly focused the jury's attention on whether "the nurses' conduct fell within the concept of professional nursing or practical nursing under the statute." Leahy, 348 N.W.2d at 613. Accordingly, the negligence per se instruction "effectively prohibited consideration of the quality and competency" of the nurses' conduct, which was the proper inquiry in a negligence action. Id. (emphasis in original).

This case is fundamentally the same as the situation presented in Leahy. The administrative code provisions at issue here are clearly regulatory in nature and do not reveal the clear and unambiguous language necessary to impose civil

liability. Number 8.10 (2) is part of a larger chapter governing the certification of advanced practice nurses. Similarly, while Section 124.24 requires hospitals to maintain written policies, failure to comply with the provision allows the Wisconsin Department of Health and Family Services to revoke or suspend a hospital's license. See Wis. Admin. Code sec. HFS 124.03 (6) and (7). This, too, supports the conclusion that the relevant administrative code provisions do not constitute "safety statutes" as the Wisconsin Supreme Court has defined that term. Cf. Antwaun A. v. Heritage Mut. Ins. Co., 596 N.W.2d 456 (1999) (statute providing for alternative regulatory penalties did not impose new standard of civil liability).

The problem associated with issuing a negligence per se instruction based upon alleged statutory violations is easy to identify in this case, just as it was in Leahy. A negligence per se instruction would improperly focus the jury's attention on whether Perez complied with the licensure statute governing nurse practitioners. Instead, the appropriate inquiry should have been, as the district court instructed, whether Perez's care for Cooper fell within the appropriate standards of care for nurse practitioners./2 Because the two code provisions upon which Cooper relies do not reflect the clear and unambiguous language required to warrant a negligence per se instruction, we affirm the district court's refusal to issue one in this case./3

B. Hospital Policies and Procedures

Cooper next argues that the district court erred in excluding evidence of Eagle River's written operating procedures and policies./4 In large measure, Cooper's second argument is inconsistent with her first, in which she claimed that the absence of any hospital procedures constituted negligence as a matter of law.

As a general rule in Wisconsin, the internal procedures of a private organization do not set the standard of care applicable in negligence cases. See Johnson v. Misercordia Community Hospital, 294 N.W.2d 501, 510 (Wis. Ct. App. 1980), citing Marolla v. American

Family Mut. Ins. Co., 157 N.W.2d 674, 678 (Wis. 1968). However, the Marolla court also recognized an exception to this general rule, "if it could be shown that an entire industry or substantially an entire industry had essentially the same safety regulations," or if Wisconsin law required the regulations. Id. at 678; Johnson, 294 N.W.2d at 538.

Even assuming the exception discussed in Marolla applied in the present case, Cooper's argument must still fail. Cooper presented no evidence that the policies and procedures were in effect at the time she received medical treatment at Eagle River. Cooper was not entitled to introduce policies that were not in effect during the relevant time period. As a result, the district court's decision to exclude them does not constitute an abuse of discretion.

C.  Expert Testimony by Family Physician

During trial, Dr. Nancy Ness, a family physician testified as an expert on Eagle River's behalf regarding the appropriate standard of care for nurse practitioners. Cooper objects to Dr. Ness's testimony in two respects. First, she claims that Eagle River should be "judicially estopped" from presenting Dr. Ness's testimony because Eagle River objected in a motion in limine to non-nurse practitioners testifying as to the proper standard of care. When the trial judge overruled Eagle River's objection, Eagle River retained Dr. Ness as an expert. Second, Cooper challenges Dr. Ness's qualifications to render an expert opinion on the issue of standard of care. Both arguments are without merit.

Judicial estoppel is an equitable doctrine, generally applied by circuit courts, that "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position." State v. Petty, 548 N.W.2d 817, 820 (Wis. 1996). The purpose of judicial estoppel is to "protect the judiciary as an institution." Id., quoting State v. Fleming, 510 N.W.2d 837, 841 (Wis. Ct. App. 1993). In Wisconsin, the doctrine is used to prevent litigants from playing "fast and loose with the judicial system" by "maintain[ing] inconsistent positions during the course of the litigation." Id.

To invoke judicial estoppel, a court must identify three elements: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position. Salveson v. Douglas County and Wisconsin County Mut. Ins. Corp., 630 N.W.2d 182, 192 (Wis. 2001). Here, condition #3 is obviously lacking because the district judge did not adopt the position advanced by Eagle River in its motion in limine. Once the district judge overruled Eagle River's objection to non-nurse practitioners testifying regarding the appropriate standard of care, Eagle River was free to adhere to the judge's decision.

Cooper's objection to Dr. Ness's qualifications as an expert is similarly flawed. Trial judges have broad discretion in determining expert qualifications and their determination will be affirmed unless it is manifestly erroneous. Bob Willow Motors, Inc. v. General Motors Corp., 872 F.2d 788, 797 (7th Cir. 1989); Jones v. Hamelman, 869 F.2d 1023, 1028 (7th Cir. 1989). While Cooper's assertion that Dr. Ness had only limited experience with nurse practitioners has some merit, the trial court's decision to admit her testimony was not manifestly erroneous. Dr. Ness served as the medical director of a large multi-specialty clinic that employed two nurse practitioners and several physician assistants. Although Dr. Ness's role is administrative in nature, at least twenty-five percent of her practice concerns obstetrics. Cooper may quarrel with the conclusions that Dr. Ness reached (and that the jury obviously credited), but her qualifications are not so limited as to warrant a new trial. We therefore affirm the decision of the district court to admit Dr. Ness's testimony.

C. Introduction of Pathology Slide

During the presentation of its defense, Eagle River called Dr. Janice Lage, who interpreted a pathology slide containing tissue samples from Cooper's placenta and offered certain conclusions regarding the cause of Cooper's placental abruption. Cooper argues that the district court

erred in admitting the slide because Eagle River never established a proper foundation./5

Federal Rule of Evidence 901 (a) states that authentication is proper if the proponent presents "evidence sufficient to support a finding that the matter in question is what its proponent claims." A common requirement in authenticating evidence is the "chain of custody;" however, an uninterrupted chain of custody is not a prerequisite to admissibility. Instead, gaps in the chain go to the weight of the evidence, not its admissibility. United States v. Wheeler, 800 F.2d 100, 106 (7th Cir. 1986). "If the trial judge is satisfied that in reasonable probability the evidence has not been altered in any material respect, he may permit its introduction." United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980).

The pathology slide in this case was properly authenticated to a degree sufficient to warrant its admissibility. The reference number on the slide matched the specimen number contained in Cooper's pathology report. Nowhere does Cooper allege that Eagle River engaged in misconduct,/6 nor does Cooper point to anything in the record that suggests the placental sample derived from a source other than Cooper. Based on these facts, the district court's decision to admit the pathology slide was proper. See United States v. Dombrowski, 877 F.2d 520, 525 (7th Cir. 1989); Mauldin v. Upjohn Co., 697 F.2d 644, 649 (5th Cir. 1983) (presenting analogous factual circumstances).

D.  Imposition of Costs

Finally, Cooper challenges the imposition of costs. Following the jury verdict, Eagle River petitioned the clerk of the district court for costs pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. sec. 1920. Magistrate Judge Skupniewitz, who also serves as clerk of the court in the Western District of Wisconsin, considered the matter, accepted Cooper's written objections, and awarded costs totaling $17,697.65.

As a general rule, Federal Rule of Civil Procedure 54 (d)(1) allows the clerk of the court to impose costs, and the action

of the clerk may be reviewed by the district court within five days. In Rose v. Maremont Corp., 850 F.2d 1226, 1255 (7th Cir. 1988), this court held that a party who objected to the imposition of costs, but did so after the five-day time limit imposed by Rule 54 (d)(1) expired, waived any challenge to the costs taxed. While that case dealt with an untimely objection, other circuits have held that the courts of appeals may review costs taxed only when the party first moves for review in the district court. See Walker v. California, 200 F.3d 624, 626 (9th Cir. 1999).

This case, however, presents a unique problem due to the "dual role" of Magistrate Judge Skupniewitz, who serves as both judicial officer and clerk of the court. At oral argument, Cooper maintained that her failure to seek review in the district court pursuant to Rule 54 (d)(1) stemmed from her belief that Magistrate Judge Skupniewitz entered the order as the presiding district judge, and not pursuant to his ministerial duties as the clerk of the court. Cooper argues that by filing written objections before Magistrate Judge (Clerk) Skupniewitz, she effectively complied with Rule 54 (d)(1)'s jurisdictional requirement.

Cooper's position does not excuse her failure to comply with Rule 54 (d)(1)'s five-day jurisdictional mandate. First, the clerk entered his initial order on November 13, 2000, but Cooper took no action until at least November 22, 2000, when she filed her objections to the Bill of Costs. Thus, even if Magistrate Judge Skupniewitz (as opposed to Clerk Skupniewitz) entered the order, Cooper filed her objections after the five days allowed by Rule 54. Based upon this circuit's precedent in Rose, Cooper's failure to file within five days constitutes a waiver. Second, the Bill of Costs in this case is clearly signed by Joseph W. Skupniewitz, Clerk of the Western District of Wisconsin, and there is nothing on the Order that suggests otherwise. Third, and most importantly, in seeking a stay of enforcement of the Bill of Costs pending appeal, Cooper properly brought her motion before the district judge. Why Cooper would bring a motion to stay before the appropriate tribunal, but fail to do the same for a

motion to reconsider is without explanation and undercuts Cooper's claim of confusion.

We therefore hold that Cooper has failed to comply with the timing requirement of Rule 54 (d)(1), and she may not seek review of the Bill of Costs in this court.

III.  Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.

FOOTNOTES

/1 Cooper disputes the fact that the slide contained tissue samples from her placenta.

/2 Cooper relies on Totsky v. Riteway Bus Service, Inc., 607 N.W.2d 637 (Wis. 2000), as an example of a statute where a negligence per se instruction was appropriate. Totsky involved the violation of a "stop sign" statute, which the Wisconsin Supreme Court held constituted a safety statute. The Wisconsin courts have routinely held that traffic statutes constitute safety statutes, the violation of which warrants a per se instruction. See Bethkal v. Willis, 378 N.W.2d 684, 687 (Wis. 1985); Grana v. Summerford, 107 N.W.2d 463 (1961); American Fidelity & Casualty Co., 87 N.W.2d 782 (1958). However, that line of cases in unavailing to Cooper's claim. Traffic statutes are not imbued with the regulatory aspects of the licensing scheme at issue in the present case. Moreover, each of the traffic statutes clearly reflected a legislative intent to create a new standard of civil liability applicable to vehicular traffic.

/3 Nothing in our opinion suggests that Cooper was prohibited from introducing evidence of the Wisconsin administrative code provisions to help inform the jury's negligence assessment. The only issue presented on appeal, however, is whether Cooper was entitled to a negligence per se instruction.
/4 The relevant hospital policies stated that nurse practitioners must engage in "mandatory consultation with a physician, either in person or via telephone," for certain cases, including obstetrical complaints.

/5 Cooper also claims that the prejudicial impact of the slide was exacerbated by Eagle River's use of the district court's "ELMO" system, which is a common projection device used in courtrooms across the country. This argument is without merit and need not be addressed further.

/6 In fact, Cooper states the opposite. See Cooper Br. at 18 ("Plaintiffs have never implied that defendants engaged in any improper conduct.").