MOSSEY (Richard), Administrator of the Estate of Frances Mossey, Deceased, Appellant, V. MUELLER and others, Respondents. [Case No. 269.]

MOSSEY, Richard, M.D., Appellant, V. ST. LUKE'S HOSPITAL and others, Respondents. [Case No. 270.]

*Nos. 269, 270. Argued May 6, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 514.)

For the appellant there were briefs by *Warshafsky, Rotter & Tarnoff, S. C.*, attorneys, and *Alan Gesler* of counsel, all of Milwaukee, and oral argument by *Ted M. Warshafsky.*

For the respondents there was a brief by *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Donald R. Peterson* and *Willard P. Techmeier* of counsel, all of Milwaukee, and oral argument by *Donald R. Peterson.*

HANLEY, J. The sole issue necessary to be determined on appeal is whether the trial court abused its discretion in ordering a new trial in the instant action.

The order for a new trial pursuant to sec. 270.49, Stats., is addressed to the discretion of the court and will not be reversed unless the court abused its discretion in so ordering a new trial. *Hillstead v. Shaw* (1967), 34 Wis. 2d 643, 150 N. W. 2d 313. If the court has ordered a new trial on more than singular grounds, then the order of the court will not be reversed unless all grounds upon which the court has relied constitute an abuse of discretion. *Jahnke v. Smith* (1973), 56 Wis. 2d 642, 203 N. W. 2d 67.

In the instant action the trial court concluded that a new trial be granted on all issues in the interest of justice. In its memorandum decision incorporated by reference in its formal order the court specified its reasons as being that the verdict of the jury is against the great weight and clear preponderance of the evidence. Such a finding is, we think, correct. On appeal the court will not look for evidence to support the jury's finding but will seek reasons for sustaining the trial court and will usually defer to the decision of the trial court. *Just v. Misericordia Hospital* (1974), 61 Wis. 2d 574, 213 N. W. 2d 369. While there is credible evidence to support the jury's finding that the hospital failed to exercise that degree of care, skill and judgment which is usually exercised by reputable hospitals in Milwaukee county, such a finding is contrary to the great weight and clear preponderance of the evidence. It is a well-settled rule that a new trial may be granted in the interest of justice because the verdict is against the great weight and clear

preponderance of the evidence, even though there exists sufficient credible evidence to support the jury's finding. *Bartell v. Luedtke* (1971), 52 Wis. 2d 372, 377, 190 N. W. 2d 145.

The jury concluded in the instant action that the defendant hospital through its agent nurses, failed to exercise that standard of care of the community and so discharge its legal duty by failing to properly account to the defendant surgeon for the surgical instruments used in the surgery performed on Frances Mossey. It is this determination that the trial court concluded was contrary to the great weight and clear preponderance of the evidence.

The rule is well settled that an employer hospital is liable for the negligent acts of its employee nurses. Similarly, in a malpractice action [1] it is well settled that the legal duty of those employees and the hospital itself is due exercise of that standard of care [2] of the community.[3]

"When a physician exercises that degree of care, judgment, and skill which physicians in good standing of the same school of medicine usually exercise in the same or similar localities under like or similar circumstances, having due regard to the advanced state of medical science at the time, he has discharged his legal duty to his patient." *Burnside v. Evangelical Deaconess Hospital* (1970), 46 Wis. 2d 519, 522, 175 N. W. 2d 230; *McManus v. Donlin* (1964), 23 Wis. 2d 289, 127 N. W. 2d 22.

Thus, for the hospital to be herein liable, it must have failed to exercise that standard of care usually exercised in similar situations by other members of the medical

---

[1] *See Schuster v. St. Vincent Hospital* (1969), 45 Wis. 2d 135, 142, 143, 172 N. W. 2d 421.

[2] *See generally: Malpractice—Locality Rule*, 27 Am. Jur. Proof of Facts, pp. 1, 14; *Nickley v. Eisenberg* (1931), 206 Wis. 265, 239 N. W. 426, as to the standard of care of nurses.

[3] This action was tried prior to the ruling in *Shier v. Freedman* (1973), 58 Wis. 2d 269, 206 N. W. 2d 166, 208 N. W. 2d 328.

profession and thus breached that legal duty owed to the patient.

The plaintiff contends that the hospital, through its agent nurses, had a duty to account for all surgical instruments used by the surgeon during an operation. He contended that the standard of care of the medical community of Milwaukee was that, in a surgical proceeding, surgical instruments would be stacked on a Mayo tray in such a way that the surgical nurse, by mere visual scan at the completion of an operation, would be able to account for the presence of all instruments used in the operation. Since, he continues, the surgical nurse had such a duty to account and since she failed to so account to the detriment of the patient, that liability for the resulting injuries arose.

The defendant hospital denies plaintiff's contentions claiming that it had no legal duty to account for surgical instruments during an operation. Such legal duties were the sole responsibility of the performing surgeon. The hospital claimed that the standard of care of hospitals in the local community was such that no instrument count—either actual or visual—was performed before, during or after the surgical procedure by hospital personnel. Accountability was the sole responsibility of the surgeon who used those instruments.

The plaintiff, Dr. Richard O. Mossey, was the sole witness and the sole expert witness who testified for the proposition that the standard of care of the Milwaukee community required a postsurgical instrument count. Dr. Mossey testified that his experience as a surgeon whose practice was limited to St. Luke's Hospital was that the surgical tray was prepared in such a fashion as to facilitate instrument accountability. He testified that the standard procedure for laying out a surgical tray was to stack the instruments to be used therein in stacks of six. Thus, if thirty-six hemostats were to be used, the surgical nurse would arrange six stacks of six hemostats

on the Mayo stand and clasp those instruments together with a metal clasp or a rubber band. Scissors, knives and retractors and other surgical instruments such as sponges and needles were not, however, so arranged. After completion of the operation, after the surgical instruments were rearranged, the nurse need but visually scan the surgical tray to determine if all instruments were accounted for. The procedure, Dr. Mossey testified, was a matter of common knowledge within the surgical community of Milwaukee county in September, 1967.

On cross-examination, Dr. Mossey testified that hospital employees in Milwaukee county did not perform and were not expected to perform actual instrument counts. "I differentiate between a visual count and an actual account." Dr. Mossey likewise testified that he did not require assisting nurses to account to him for instruments during surgery he performed at St. Luke's Hospital. Such an absence of an accountability requirement was in fact, extended to Mrs. Petrovic who had often assisted Dr. Mossey and who assisted Dr. Mueller as a scrub nurse during the radical mastectomy performed on Mrs. Frances Mossey.

Additional testimony was educed concerning the procedure involved in setting up an instrument tray. Instruments required for surgery the succeeding day are often prepared the prior evening by hospital aides. A general card per each operation showing the number and type of instruments used is referred to by the hospital personnel. Additionally, the hospital personnel also refer to the performing surgeon's preference card to determine if the instruments required must be modified in any fashion and the instrument tray is so supplemented.

The instruments are then sealed, sterilized and stored for the upcoming surgery. The general card relied upon by hospital personnel is replaced in the file. The surgeon's

preference card which contains only the supplementary instructions, however, remains with the instruments.

The following morning the surgical nurse lays out the instrument tray. No instrument count is, however, then performed, Dr. Mossey testified. Similarly there is no record in the operating room of the number of instruments required. The only record is the surgeon's preference card which merely contains the doctor's supplementary order. There is no instrument count performed after the conclusion of surgery according to Dr. Mossey. However, he claims accountability is required of the surgical nurse.

Dr. Mossey, while on the stand, was given the operative report of Dr. Mueller on the surgery performed on Frances Mossey. He testified that such a report is dictated by the surgeon and indicates the hospital case number, the medical record unit number, the identity of the person, the identity of the surgeon, the identity of the assistant and the identity of the nurses who are in the room at the time of the procedure. On another part of the record it was indicated that the sponge count was correct and that needle count was likewise correct. There was, however, no inquiry in any of the hospital records as to an instrument count. Dr. Mossey likewise testified that he used a similar form which likewise contains no reference whatsoever to an instrument count. Concerning the reference to sponge and needle counts, Dr. Mossey stated that sponges are formally counted by two persons simultaneously so as to insure accuracy. These sponges are again formally recounted after surgery and prior to being discarded. Dr. Mossey further testified that no formal count so as to insure accountability is, however, made on surgical instruments.

Dr. Joseph Mueller, the surgeon who performed the radical mastectomy on Mrs. Mossey, testified that he was solely responsible for the unfortunate incident. He testi-

fied that he did not rely on Mrs. Petrovic, the assisting surgical nurse, for an instrument count during the operation. He testified that the nurses at St. Luke's Hospital were not responsible for instrument accountability and he had never even heard of the concept of instrument accountability as testified to by Dr. Mossey. Dr. Mueller further testified that surgical nurses were not responsible for counting or being accountable for instrument counts at West Allis Memorial Hospital, St. Joseph's Hospital, Milwaukee Lutheran Hospital, Deaconess Hospital and Trinity Hospital, all located in Milwaukee.

Dr. Jules D. Levin, an associate clinical professor at the Medical College of Wisconsin, an attending staff physician at St. Luke's, St. Francis, Deaconess, Mt. Sinai, St. Michael's and West Allis Hospitals, a consulting physician at County General Hospital and a former staff surgeon at Veteran's Hospital, was called to testify. Dr. Levin testified that in no hospital with which he was affiliated was any employee expected to do instrument counts. Dr. Levin testified that at the hospitals with which he was affiliated, no employee was required to nor were any instrument counts done before or after any surgical procedure. Accountability of hospital employees was limited solely to needles and sponges. He further testified that it was the responsibility of the surgeon to account for all instruments used in that surgical procedure.

Dr. Joseph J. Gramling, an associate professor of surgery at the Medical College of Wisconsin, a staff surgeon at St. Joseph's Hospital at the time in question and presently staff surgeon at both St. Joseph's and Elmbrook Hospitals testified for the defense. He testified that the singular responsibility for instruments used in surgery was that of the surgeon. Hospital employees were not required to count or account for surgical

instruments either prior to or at the completion of the surgical procedure.

Testimony was likewise received from numerous nurses as to the standard of care in the Milwaukee community in 1967. Miss Bernice Larson, the nursing director presently and in 1967 at St. Luke's Hospital, testified that the nurses and other hospital personnel (approximately 700) had no responsibility to either count or account for surgical instruments used in surgery. The responsibility for such instrument accountability is singularly that of the surgeon. This testimony was corroborated by Evelyn Rouse, a past instructor and from 1964 to 1970 Director of the Deaconess Hospital School of Nursing, who testified that student nurses were not instructed to make surgical instrument counts immediately before, during or after an operative procedure.

Joan Martin, head nurse at St. Luke's, and Elfriede White, a registered nurse at St. Luke's, also testified that the surgeon is singularly responsible for instrument accountability. Finally Mrs. Petrovic, the surgical nurse during the operation in question, testified that there was no accountability responsibility, either visual or by a formal count, by her or other like situated hospital personnel and that Dr. Mueller, the chief surgeon, is singularly responsible.

After reviewing the evidence adduced, we are of the opinion that the trial court did not abuse its discretion in granting a new trial in the interest of justice. The finding that St. Luke's Hospital, through its agent nurses, failed to exercise that standard of care exercised by reputable hospitals in Milwaukee county, is against the great weight and clear preponderance of the evidence. The great weight and clear preponderance of the evidence is to the contrary. The evidence established that the surgical nurses had no responsibility to count or account for surgical instruments during a surgical pro-

cedure and that such accountability was the sole responsibility of the surgeon.

The plaintiff contends that the trial court abused its discretion in ordering a new trial on the basis that it erroneously gave the absent witness instruction. The plaintiff argues that the absent witness instruction was properly given because Merton Knisely, a hospital administrator at St. Luke's in 1967, and Dr. Nellen, the radiologist in charge of teaching files at St. Luke's, were not called by the defendant. While the witnesses were under the control—available—to the defendant hospital,[4] the trial court concluded in motions after verdict that the evidence of those witnesses would merely have been cumulative and insufficient to support an inference of unfavorable testimony. Thus the court concluded that the giving of the absent witness instruction was error and prejudicial. The conclusion of the trial court was correct. The trial court did not abuse its discretion in granting a new trial on such grounds.

Finally, the court concluded that the damages were excessive and that the issue of damages should be relitigated. In connection with the award for pain, suffering and disability the court pointed out that the plaintiff himself testified that by April 15, 1968, Mrs. Mossey's pain was alleviated to a great extent, that while not entirely eliminated, she had only occasional pain which persisted to the date of her death. The surgery in April, 1968, and subsequent treatment was attributable to the malignancy, not to the radical mastectomy or the revision.

This court has recognized that a trial court is generally in a better position to ascertain the correctness of the damages and, in the absence of an abuse of discretion, its determination will be upheld. *Boughton v. State Farm*

---

[4] *Thoreson v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 231, 201 N. W. 2d 745.

*Mut. Automobile Ins. Co.* (1959), 7 Wis. 2d 618, 97 N. W. 2d 401.

The defendant, by motion to review, contends the trial court erred in:

1. Instructing the jury that if they find the hospital negligent, then they must conclude the negligence was causal; and

2. in failing to direct the verdict for the defendant.

We find no merit to these contentions. If the defendant hospital had the duty to account, then its failure to account was causal of the injury. Additionally, a verdict could not be directed in that there was credible evidence to the effect that the hospital had the duty to account for the surgical instruments.

We conclude that the order for a new trial was properly entered pursuant to sec. 270.49, Stats., and cases decided thereunder in that it not only stated the statutory grounds for the order but also incorporated therein the trial court's memorandum decision setting forth the reasons why a new trial was ordered in the interests of justice. We find no abuse of discretion on the part of the trial court and the order is affirmed.

*By the Court.*—Order affirmed and cause remanded for a new trial.