Edward P. LEAHY, a minor, by C. James Heft, his Guardian ad Litem, Plaintiff-Respondent,†

v.

KENOSHA MEMORIAL HOSPITAL and St. Paul Fire & Marine Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 83–834. Submitted on briefs February 21, 1984.—Decided March 27, 1984.*
(Also reported in 348 N.W.2d 607.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendants-appellants, the cause was submitted on the briefs of *Richard J. Palmersheim* of Milwaukee

and *Douglas J. Carroll* of *Arnold, Murray, O'Neill & Schimmel* of Milwaukee of counsel.

For the plaintiff-respondent, the cause was submitted on the brief of *C. James Heft* of *Heft, Dye, Heft & Paulson* of Racine.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.    Kenosha Memorial Hospital and its insurer, St. Paul Fire and Marine Insurance Company, appeal from a judgment entered against them in the total amount of $1,260,021.98 resulting from a jury verdict assessing seventy percent of the causal negligence against the hospital.[1]  We conclude that, over a proper objection, the trial court erroneously gave a negligence per se instruction, which was prejudicial. We, therefore, reverse and remand for a new trial.

The factual question the jury was asked to decide in this case was whether Edward P. Leahy suffered brain damage shortly after his birth because of the actions of the treating physicians and the hospital, or whether his condition was either present or caused by events prior to his birth at the hospital.

A portion of the plaintiff's evidence related to sec. 441.11, Stats., which defines the practices of professional nursing and practical nursing. Certain expert witnesses for the plaintiff testified that the hospital violated this statute because the persons caring for the plaintiff were not registered nurses within the meaning of sec. 441.11.[2]

---

[1] The three treating physicians were assessed the remaining negligence at ten percent each.

[2] Section 441.11, Stats., provides in part:

Definitions. (1) PRACTICE OF PROFESSIONAL NURSING. The practice of professional nursing within the terms of this chapter means the performance for compensation of any act in the observation or care of the ill, injured or infirm, or for the maintenance of health or prevention of illness of others, which act requires substantial nursing skill, knowledge or training, or appli-

The trial court recited sec. 441.11(1) and (2), Stats., as part of its instructions with only minor modifications. It prefaced these statutory instructions with the statement that a violation of a statute enacted by the legislature is negligence. It followed these statutory instructions with a statement to the effect that if certain actions by the hospital were found to have occurred, such would constitute negligence.

The dispositive issues on this appeal are: (1) whether the hospital sufficiently objected with particularity to the instruction; (2) if so, whether the instruction was a correct statement of the law, and (3) if not, whether the instruction was harmless error.

## SUFFICIENCY OF OBJECTION

When the court asked for any objections to the proposed statutory instruction, the hospital's attorney responded:

cation of nursing principles based on biological, physical and social sciences, such as the observation and recording of symptoms and reactions, the execution of procedures and techniques in the treatment of the sick under the general or special supervision or direction of a physician, podiatrist or dentist and the execution of general nursing procedures and techniques. Except as provided in s. 50.04(2)(b), the practice of professional nursing includes the supervision of a patient and the supervision and direction of trained practical nurses and less skilled assistants.

(2) PRACTICE OF PRACTICAL NURSING. The practice of practical nursing under this chapter means the performance for compensation of any simple acts in the care of convalescent, subacutely or chronically ill, injured or infirm persons, or of any act or procedure in the care of the more acutely ill, injured or infirm under the specific direction of a nurse, physician, podiatrist or dentist. A simple act is one which does not require any substantial nursing skill, knowledge or training, or the application of nursing principles based on biological, physical or social sciences, or the understanding of cause and effect in such acts and is one which is of a nature of those approved by the board for the curriculum of schools for trained practical nurses.

Your Honor, we do object to the incorporation of the statute with respect to the definition of registered nurses, licensed practical nurses as being incorporated into the negligence instruction.

Section 805.13 (3), Stats., provides in part:

Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection *with particularity* on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict. [Emphasis added.]

*Air Wisconsin, Inc. v. North Central Airlines, Inc.*, 98 Wis. 2d 301, 311, 296 N.W.2d 749, 753 (1980), recites the goal of the statute as follows:

The purpose of the rule requiring that the grounds for objection be stated on the record is to afford the opposing party and the trial court an opportunity to correct the error and to afford appellate review of the grounds for the objection. This court has stated that, in the absence of a specific objection which brings into focus the nature of the alleged error, a party has not preserved its objections for review.

Even if we were to conclude that the objection was not made with the particularity required by the statute, proceedings before the trial court on motions after verdict demonstrate that both opposing counsel and the trial court understood the thrust of the hospital's objection to the instruction. The plaintiff's "Response To Defendants' Arguments In Support Of Their Motions After Verdict" states, in part, as follows:

The evidence in this case is uncontradicted that the nurses in the nursery worked alone and did not have a doctor or a registered professional nurse working with them and it was the contention of the plaintiffs that a hospital who permitted practical nurses to care for acutely ill patients or technicians to care for acutely ill patients *in violation of the statutes of the State of Wis-*

*consin or a practical nurse who took care of an acutely ill patient in violation of the Statutes of the State of Wisconsin would be negligent, just as a person who speeds in violation of the Statutes of the State of Wisconsin is considered negligent.* [Emphasis added.]

It is apparent that the plaintiff's counsel proposed the language from a negligence per se standpoint because this is the very ground upon which he defended it at motions after verdict. After hearing the motions after verdict, the trial court entered an "Order For Judgment" in which it recited the following:

The specific Motions After Verdict made by the attorneys for the defendants were *the same motions which had been made during trial.* The Court had already, therefore, given detailed responses to those motions during trial and saw no reason after verdict to change his opinions. The Court therefore ruled on the Motions After Verdict from the bench, discussing them in some detail and ultimately specifically granting the Motions After Verdict of the plaintiff, Edward P. Leahy, a minor, including the Motion for double costs and denied all of the Motions After Verdict brought by the defendants. [Emphasis added.]

These remarks demonstrate that the trial court construed the motions after verdict and the arguments submitted in conjunction therewith to be the same as those which had been made during trial. The plaintiff's claim on this appeal, that the trial court was not apprised of the thrust of the hospital's objection at trial, flies directly in the face of the plaintiff's defense of the instruction at motions after verdict as a negligence per se instruction and the trial court's implicit statement that it considered the instruction as such.

Moreover, we conclude that the hospital's objection was stated with the requisite particularity under sec. 805.13 (3), Stats. A fair reading of the language of the objec-

tion demonstrated that it was grounded on the linkage of the statutory definitions with the negligence instruction. We should not interpret the language of the objection in a vacuum. It must be considered in conjunction with the proffered instructions. In this context, considering the language of the proposed instruction and that of the objection registered, we conclude that the hospital stated its objection with the particularity required under the statute.

## CORRECTNESS OF THE INSTRUCTION

### I.

The plaintiff argues that the instructions *read in toto* do not amount to an instruction of negligence per se. We disagree. As previously noted, the plaintiff defended the instruction at motions after verdict in terms equating a violation of the statute with negligence. Indeed, the plaintiff likened the instruction to that of a driver "who speeds in violation of the Statutes of the State of Wisconsin is considered negligent." This is classic negligence per se language.

Considering the context in which the language of sec. 441.11(1) and (2), Stats., was used, we are satisfied that the language used by the trial court was a negligence per se instruction. The court addressed the matter of negligence in the instructions by first delivering Wis J I—Civil 1005.[3] The trial court then proceeded to give the optional concluding paragraph to the standard instruction as follows:

In addition to this general definition of negligence, there are other safety statutes enacted by the legislature, *a*

---

[3] The only modification was the addition of the words "or a hospital" after the word "person."

*violation of which is negligence* as that term is used in the verdict and these instructions. [Emphasis added.]

This language alerts any reasonably informed juror that the hospital's negligence can be measured not only from the general definition already given but also from a finding of a violation of a statute.

The court then delivered the statutory definitions of professional nursing and practical nursing. The court following these definitions with this language:

*If you find by virtue of this statute* that the Kenosha Memorial Hospital placed practical nurses or technicians in positions where they could not legally function, in positions that should have been staffed by professional registered nurses, or if the Kenosha Memorial Hospital permitted practical nurses to function as professional registered nurses, then the Kenosha Memorial Hospital *would be negligent as that term has been defined for you.* [Emphasis added.]

The trial court concluded the negligence phase of the instructions with Wis J I—Civil 1023.7 (with certain modifications) upon which a further finding of negligence against the hospital, unrelated to any statute, could be premised.

A fair reading of the entire negligence instructions and the context within which they were delivered reveals that alternative grounds for a finding of negligence against the hospital were presented to the jury, including language which informed the jury that a violation of sec. 441.11, Stats., could form the basis for such a finding. This constituted a negligence per se instruction.

## II.

The next question is whether a violation of the statute is negligence per se. This requires a determination of whether the statute is a safety statute.

A safety statute is a legislative enactment designed to protect a specified class of persons from a particular type of harm. *Walker v. Bignell,* 100 Wis. 2d 256, 268, 301 N.W.2d 447, 454 (1981). For the violation of the statute to constitute negligence per se, it must be demonstrated that the harm inflicted was the type the statute was designed to prevent and that the person injured was in the class sought to be protected. *Id.* Further, some expression of legislative intent that the statute was meant to become a basis for the imposition of civil liability must appear. *Id.* at 269, 301 N.W.2d at 455.

While obvious benefits and protections inure to the public from the enactment and enforcement of ch. 441, Stats., its specific thrust is to (1) regulate the nursing profession by establishing a board of nursing; (2) provide for the examination and licensing of nurses, and (3) establish penalties for violations of the chapter.

The common-law rule is well settled that an employer hospital is liable for the negligent acts of its employee nurses. *Mossey v. St. Luke's Hospital,* 63 Wis. 2d 715, 720, 218 N.W.2d 514, 516 (1974). Similarly, in a malpractice action, it is well settled that employees and the hospital have a legal duty to exercise the standard of care of the community. *Id.* at 720, 218 N.W.2d at 516–17. Statutes are not to be construed as changing the common law unless the purpose to effect such a change is clearly expressed therein and such purpose is demonstrated by language which is clear, unambiguous and peremptory. *Wisconsin Bridge & Iron Co. v. Industrial Commission,* 233 Wis. 467, 474, 290 N.W. 199, 202 (1940). Later cases elevated the burden to show a purpose to change the common law to "beyond any reasonable doubt." *Grube v. Moths,* 56 Wis. 2d 424, 437, 202 N.W.2d 261, 268 (1972). Where the question is whether a right of action is to be inferred from a statute or conferred by a statute, the supreme court has held:

"The legislative intent to grant or withhold a private right of action for the violation of a statute, or the failure to perform a statutory duty, is determined primarily from the form or language of the statute. The nature of the evil sought to be remedied, and the purpose it was intended to accomplish, may also be taken into consideration. In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability."

*Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis. 2d 56, 74–75, 307 N.W.2d 256, 266 (1981), quoting *McNeill v. Jacobson,* 55 Wis. 2d 254, 258–59, 198 N.W.2d 611, 614 (1972).

As already noted, the purpose of ch. 441, Stats., is to regulate the nursing profession through the creation of a board of nursing and to provide for the licensing of nurses. While these laws result in securing the safety and welfare of the public as an entity, nothing in ch. 441, directly or by implication, reveals a legislative intent to grant a private right of action for a violation of the statute. Dean Prosser has stated that:

Most licensing statutes, such as those applicable to automobile drivers or physicians, have been construed as intended only for the protection of the public against injury at the hands of incompetents, and to create no liability where the actor is in fact competent but unlicensed.

W. Prosser, *Handbook of the Law of Torts* § 36 at 196 (4th ed. 1971). Wisconsin followed the Prosser rule in *Westfall v. Kottke,* 110 Wis. 2d 86, 328 N.W.2d 481 (1983). The trial court in *Westfall* instructed the jury that they could consider the absence of a license on the issue of negligence. In holding that the trial court's instruction was erroneous, the supreme court said:

Considerable emphasis is placed upon the fact that Westfall was only fourteen and an unlicensed driver. The trial court appeared to place substantial reliance on the fact of Westfall's extreme youth and that he did not have a license to operate a motorcycle. The court of appeals properly concluded that it was erroneous to base negligence upon these factors, which are unrelated to the *actual conduct* of the person inquired about. The fact plaintiff Westfall was unlicensed did not constitute a cause of the accident. It was erroneous to instruct the jury that either the age of the operator or that he was unlicensed were factors to be considered in determining whether he was negligent. [Emphasis added.]

*Id.* at 105, 328 N.W.2d at 491. The negligence per se instruction in the instant case created the same problem as that in *Westfall* in that it highlighted to the jury the question of whether the nurses' conduct fell within the concept of professional nursing or practical nursing under the statute and effectively prohibited consideration of the *quality* and *competency* of such conduct.

We conclude that sec. 441.11, Stats., is not a safety statute and does not grant a private right of action for its violation. The trial court's negligence per se instruction based on sec. 441.11 was therefore erroneous.

## HARMLESS ERROR

We recognize the well-established rule that upon appeal a challenge to a given instruction requires us to consider the jury instructions as a whole and in their entirety. *State v. Paulson,* 106 Wis. 2d 96, 108, 315 N.W.2d 350, 356 (1982). If this analysis leads us to the conclusion that the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist. *Id.* In addition, we must be satisfied that a probability, and not a mere possibility, existed that

the jury was misled. *Nashban Barrel & Container Co. v. G.G. Parsons Trucking Co.,* 49 Wis. 2d 591, 606, 182 N.W.2d 448, 456 (1971). Where an instruction is erroneous and tends to or probably misleads the jury, such misstatement of the law constitutes prejudicial error. *Lemberger v. Koehring Company,* 63 Wis. 2d 210, 225, 216 N.W.2d 542, 550 (1974) ; *Bokelkamp v. Olson,* 254 Wis. 240, 244, 36 N.W.2d 93, 95 (1949).

In the instant case, the instruction was a misstatement of the law which presented to the jury a basis on which the finding of negligence against the hospital may very well have been premised. The instruction goes to the heart of one of the claims of negligence against the hospital. Therefore, the erroneous instruction affected a substantial right of the hospital, and the resulting prejudice cannot be deemed harmless. Erroneous instructions affecting a substantial right mandate a new trial because we have no means of determining whether the jury's verdict was predicated upon the misstatement. *Christians v. Homestake Enterprises, Ltd.,* 101 Wis. 2d 25, 54, 303 N.W.2d 608, 622 (1981). We therefore conclude that the improper instruction constituted prejudicial error and was not harmless.

## TESTIMONY OF NURSE ARLENE FIEDLER

The above holdings do not require us to address the other issues raised on this appeal. Recognizing, however, that this matter is remanded for a new trial, we feel compelled to state our reservations regarding the testimony of nurse Arlene Fiedler, who was permitted to testify in certain medical areas arguably beyond her expertise in the field of nursing. We recognize that the latitude allowed an expert witness falls largely within the discretion of the trial court. *Maci v. State Farm*

*Fire & Casualty Co.*, 105 Wis. 2d 710, 720, 314 N.W.2d 914, 920 (Ct. App. 1981). The qualifications of a witness should relate to his or her background, education, and experience rather than a label as to a profession or trade. *Karl v. Employers Insurance of Wausau*, 78 Wis. 2d 284, 297, 254 N.W.2d 255, 261 (1977). However, given nurse Fiedler's lack of personal involvement in the facts of this case, her admission that she does not usually diagnose without personal observation, her admission that she is not an expert on hypoglycemia, her acknowledgement that she had never previously been asked to render an opinion of the type presented in the case at bar and that certain aspects of her testimony were premised upon conversations with a physician at a conference, we question whether her nursing expertise permitted her to offer the far-reaching opinions given by her in this case. Upon retrial, we suggest a close analysis of nurse Fiedler's qualifications to render medical opinions relating to diagnosis, causation and permanency.

## CONCLUSION

Our holding requires a new trial on the issue of liability. However, we defer to the discretion of the trial court as to whether the erroneous instruction affected the determination of damages and whether a new trial on the issue of damages is also required.

*By the Court.*—Judgment reversed and cause remanded for a new trial.