Randolph TATUR, Raymond Kramer, Eugene Dusell, Melvin Wedwick, Robert Martindale, Donald Molstad, Gerald Booth and Phillip J. Schneider, Plaintiffs-Appellants,†

v.

David SOLSRUD and John Christman, Defendants-Respondents,

John P. KAISER and Alan Rathsack, Defendants.

Court of Appeals

*No. 91-1496. Submitted on briefs December 19, 1991.—Decided February 18, 1992.*

(Also reported in 481 N.W.2d 657.)

† Petition to review granted.

On behalf of plaintiffs-appellants, the cause was submitted on the briefs of *Richard L. Wachowski* of *Thornton, Black, Wachowski & Grosskopf, S.C.* of Eau Claire.

On behalf of defendant-respondent Solsrud, the cause was submitted on the brief of *David E. Richie* of

*Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.*
of Eau Claire. On behalf of defendant-respondent
Christman, the cause was submitted on the brief of
*Susan M. Zabel* of *Coe, Dalrymple, Heathman, Coe &
Zabel, S.C.* of Rice Lake.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Randolph Tatur, Raymond
Kramer, Eugene Dusell, Melvin Wedwick, Robert Mar-
tindale, Donald Molstad, Gerald Booth and Phillip J.
Schneider, candidates running for reelection to the Rusk
County Board, appeal a summary judgment in favor of
David J. Solsrud and John Christman, sued for defama-
tion because they allegedly misrepresented the candi-
dates' voting records in letters they sent out to electors
during the election race.[1] The trial court held that mis-
representing how the candidates had voted on specific
issues is not defamatory as a matter of law. We agree and
affirm.

We apply the summary judgment statute, sec.
802.08(2), Stats., in the same manner as the circuit
court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304,
315, 401 N.W.2d 816, 820 (1987). Because that method-
ology is well known, it need not be repeated here. *Paape
v. Northern Assur. Co.,* 142 Wis. 2d 45, 50, 416 N.W.2d
665, 667 (Ct. App. 1987).

The issue on appeal is whether the alleged misrepre-
sentations concerning the candidates' voting records are
capable of a defamatory meaning. "A communication is
defamatory if it tends so to harm the reputation of

---

[1]The other defendants, John P. Kaiser and Alan Rathsack,
are not parties to this appeal. Kaiser did not seek summary judg-
ment, and the trial court in an earlier opinion granted summary
judgment in favor of Alan Rathsack, which was not appealed.

another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Ranous v. Hughes,* 30 Wis. 2d 452, 460, 141 N.W.2d 251, 254 (1966) (quoting 3 Restatement of Torts § 559 (1938)). In determining whether language is defamatory, "the words must be construed in the plain and popular sense in which they would naturally be understood." *Meier v. Meurer,* 8 Wis. 2d 24, 29, 98 N.W.2d 411, 414 (1959) (quoting *Leuch v. Berger,* 161 Wis. 564, 571, 155 N.W. 148, 151 (1915)). It is the function of the court as a matter of law to determine whether a communication is capable of a defamatory meaning. *Lathan v. Journal Co.,* 30 Wis. 2d 146, 153, 140 N.W.2d 417, 421 (1966).

The candidates allege that the letters sent by Solsrud and Christman to electors contained false statements and misrepresentations regarding how they voted on specific resolutions, the effect of their vote and the procedural and factual backgrounds of the resolutions. The candidates, however, never specifically state in either their complaint or their amended complaint what particular statements in the two- to three-page letters they find objectionable. Rather, they merely attached the letters to the complaint. We note that this is not in accordance with sec. 802.03(6), Stats., which requires that "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint . . .." However, because this issue was not raised on appeal, we deem it abandoned.[2] *Young v. Young,* 124 Wis. 2d 306, 317, 369 N.W.2d 178, 182 (Ct. App. 1985). For the purposes of this appeal, we will assume that all

[2]Christman and Solsrud did raise this issue before the trial court. The trial court found that under Wisconsin's liberal notice pleadings, the complaint was sufficient, but this finding was not challenged on appeal.

the statements concerning the candidates' voting records are false. Most of the statements concern how the candidates voted on issues regarding expenditures or taxes. Examples of the statements contained in the letters are as follows:

> My opponent,

> Voted against "Elimination of New Hiring & Replacements" in an effort made to curb more spending and higher taxes. Positions would not have been filled without the full approval of the County Board.

> . . ..

> Voted against the repeal of the 6% double penalty on delinquent real estate taxes. There already was a 12% interest rate and the penalty put that much more burden on the taxpayer who could not pay his taxes on time.

> . . ..

> Voted to pay $6,184.00 for back retirement tax to State of Wisconsin. This was on top of $16,808.00 payments and interest to the State which have accumulated since 1980 because of a County management oversight.

█ The candidates contend that Christman and Solsrud, by intentionally misleading the public as to their voting records, attempted to lower the candidates in the estimation of the community and attempted to deter electors from voting for them. While we do not condone such illegal campaign tactics[3] as allegedly used by

[3]Section 12.05, Stats., makes it a criminal offense to "knowingly make or publish, or cause to be made or published, a false representation pertaining to a candidate which is intended or tends to affect voting at an election."

Christman and Solsrud, misrepresenting how someone votes on an issue is not defamatory as a matter of law because it does not assault a person's character such that it would lower a person's esteem in a community. The situation presented here is analogous to *Frinzi v. Hanson,* 30 Wis. 2d 271, 140 N.W.2d 259 (1966).

Frinzi argued that the statement "Dominic Frinzi, by stating that he is considering running as an independent has thrown away all pretense at being a Democrat," *id.* at 277, 140 N.W.2d at 262, was defamatory because it characterized him as "a deceiver, a man unworthy of public confidence, a man having a pretended character and a man who is a premeditated liar." *Id.* The court held that running as an independent is not disgraceful as to hold a person up to public ridicule or contempt. *Id.* at 278, 140 N.W.2d at 262. The court further held that the thrust of the statement implying that Frinzi was not a good Democrat was also not libelous even though it might cause some Democrats not to vote for him. *Id.* Likewise, how elected officials vote on issues is not disgraceful so that it would lower their esteem in the community even though it might cause some electors not to vote for them. The candidates attempt to distinguish *Frinzi* on the basis that here false factual statements were intentionally made four days before the election in order to persuade voters not to vote for them. However, the fact that the alleged misrepresentations were intended does not render a nondefamatory statement defamatory. *See Converters Equip. Corp. v. Condes Corp.,* 80 Wis. 2d 257, 262-64, 258 N.W.2d 712, 714-15 (1977); *see also* 53 C.J.S. *Libel and Slander* § 10 (1987).

The candidates further argue that the violation of sec. 12.05, Stats., which makes it a criminal offense to

publish false representations pertaining to a candidate, should constitute defamation per se. They argue that the relationship between sec. 12.05 and the law of defamation may be analogized to the relationship between safety statutes and the common-law of negligence where, generally, violation of a safety statute will constitute negligence per se. *See Locicero v. Interpace Corp.*, 83 Wis. 2d 876, 884, 266 N.W.2d 423, 427 (1978). However, statutes are not to be construed as changing the common-law unless the purpose to effect such a change is clearly expressed therein and such purpose is demonstrated by language that is clear, unambiguous and peremptory. *Leahy v. Kenosha Mem'l Hosp.*, 118 Wis. 2d 441, 449, 348 N.W.2d 607, 612 (Ct. App. 1984). Because there is nothing in ch. 12 or sec. 12.05 suggesting that it was intended to change the common-law of defamation, we conclude that a violation of sec. 12.05 does not constitute defamation per se.[4] Because we conclude that the statements concerning the candidates' voting records were not defamatory as a matter of law, we affirm.

The dissent would hold that the letters are defamatory because it makes the plaintiffs "appear as spendthrifts and not caring how taxpayer money was spent." Because the plaintiffs are public officials, such a holding would require a further analysis of the first amendment issues as established in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). As was the case in *Frinzi*, we do not

[4]Even if a plaintiff can demonstrate the legislative intent to impose civil liability for violation of a statute, it must be shown that the statute aims to prevent the harm allegedly inflicted and that the plaintiff is in the class sought to be protected. *Leahy*, 118 Wis. 2d at 449, 348 N.W.2d at 612. Here, in addition to the absence of a demonstrated legislative intent to alter the well-established laws of defamation, there arises a question of whether the plaintiffs are part of the class to be protected.

reach these issues because we hold that the letters are not defamatory. *Id.* at 276, 140 N.W.2d at 261.

*By the Court.*—Judgment affirmed.

CANE, P.J. *(dissenting).* I dissent from the majority's opinion concluding that the intentional misrepresentations on how the plaintiffs had voted on various financial issues before them while members of the Rusk County Board are not defamatory as a matter of law. In *Frinzi v. Hanson,* 30 Wis. 2d 271, 275, 140 N.W.2d 259, 261 (1966), the Wisconsin Supreme Court held that a complaint alleging defamation should be dismissed if the language complained of is incapable under the circumstances pleaded of harming the reputation of the plaintiff so "as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." I think it is important to note that the court continued to state that, "[i]n determining whether language is defamatory, the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Id.* at 276, 140 N.W.2d at 261.

The plaintiffs' complaint alleges that the defendants had intentionally misrepresented their voting record on numerous financial issues before them while members of the Rusk County Board. If believed, the letters would make the plaintiffs appear as spendthrifts and not caring how taxpayer money was spent. *Frinzi* tells us that in determining whether the language is defamatory, the alleged false statements must be considered in the context in which they were used and under the circumstances they were uttered. Here, letters containing these intentional misrepresentations were distributed to the

public four days before the election and for the purpose of lowering the public's perception of these candidates and to defeat them at the voting booths. Whether these false letters caused their defeat is unknown, but the plaintiffs, all incumbents, were in fact defeated. Although not perfect, a public election does tell us something about the community's estimation of a candidate. However, when the estimation is influenced by lies, the candidate's standing in the community has been lowered.

Obviously, the only purpose of these intentionally false letters in the context used and uttered was to cast these plaintiffs as individuals who waste taxpayers' money in order to lower their estimation in the community and lessen their chances for re-election. If we believe the complaint, which we must at this stage of the action, the defendants succeeded. This type of activity must not be condoned anywhere in a democratic society. I recognize that in elections we must allow rough and coarse comments concerning a candidate's qualifications, but the line must be drawn when those comments are intentionally false representations made to influence the election and defeat the candidate. A candidate for any public office should never have to accept intentionally false statements about his character that lower him in the community's eye. Making intentional false statements has never been protected under the first amendment, nor should it be.

Wisconsin has recognized this and made it a crime for one to make false representations pertaining to a candidate that is intended to affect voting at an election. *See* sec. 12.05, Stats. Similarly, one should be liable in a defamation action for damages when making to the public intentionally false representations about a candidate

274

when those false representations are made to influence the voter's estimation of that candidate.

Therefore, I would reverse the summary judgment and allow this action to go to trial on the merits of the complaint.