COURT OF APPEALS
DECISION
DATED AND FILED

**January 28, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP1761**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV1

**IN COURT OF APPEALS**
**DISTRICT III**

---

JORI BIELAWSKI AND DAVID A. BIELAWSKI,

    PLAINTIFFS-APPELLANTS,

  V.

ANDREW J. BARTH,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Langlade County: JOHN B. RHODE, Judge. *Reversed and cause remanded for further proceedings.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1 HRUZ, J. Jori and David Bielawski sued Andrew Barth, alleging that he negligently caused Jori to contract several hospital-acquired infections not related to any particular medical treatment but due to general uncleanliness at a

hospital that Barth managed.[1] The circuit court dismissed their claims on the ground that WIS. STAT. § 181.0855(1) (2021-22)[2] granted Barth immunity due to his status as the hospital's president and chief executive officer (CEO). The Bielawskis appeal that order, arguing that the court erred by dismissing their claims because their complaint did not allege that the hospital was a corporation organized under WIS. STAT. ch. 181 and, even if the hospital was a ch. 181 corporation, § 181.0855(1) does not bar their negligence claims against Barth.

¶2 We conclude that WIS. STAT. § 181.0855(1) provides immunity from liability to a hospital's corporate officer when the hospital is a nonstock corporation under WIS. STAT. ch. 181. That immunity applies, subject to certain statutory exceptions, when the hospital's corporate officer is being sued for breaching, or failing to perform, a duty resulting solely from his or her status as that hospital's corporate officer. The Bielawskis' negligence claims are, by their own allegations, based solely on Barth's failure to perform a duty that results from his status as the hospital's president and CEO. The allegations in the Bielawskis' complaint, however, are insufficient to establish that the hospital is, in fact, a nonstock corporation organized under ch. 181. Therefore, we agree with the Bielawskis that the circuit court erred by dismissing their complaint on this basis, at least at this stage in the proceedings.

¶3 In addition to the immunity issue, the circuit court had rejected Barth's contention, made in his motion to dismiss, that the Bielawskis' negligence claims are governed by WIS. STAT. ch. 655, which does not cover Barth because he

---

[1] For ease of reading, we will refer to Jori and David collectively as "the Bielawskis" and to Jori and David, individually, using their first names.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

is not a "health care provider" who is subject to ch. 655. While the court, upon reconsideration, granted Barth's motion to dismiss on immunity grounds, the issue of whether liability related to Jori's injuries is limited to that available under ch. 655 remains a viable issue, which the parties have fully briefed. We generally agree with the circuit court on this matter. Specifically, we conclude that, with the exception of the Bielawskis' claim that Barth failed to warn Jori of the risk of contracting an infection, the rest of the Bielawskis' claims are not "medical malpractice" claims that should have been brought under ch. 655.

¶4      Accordingly, we reverse the order dismissing the Bielawskis' complaint and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶5      According to the complaint, Jori was a patient at the Aspirus Langlade Hospital ("the Hospital") from January 31, 2019, to February 13, 2019. During that time, Barth was the president and CEO of the Hospital. Jori was admitted to the Hospital for a hysterectomy, an appendectomy, and a repair of an intestinal blockage. During her stay at the Hospital, Jori contracted "several life-threatening infections including one from C. difficile." As a result of these infections, Jori spent several months in treatment. On January 4, 2022, the Bielawskis sued only Barth in relation to the foregoing events, not the Hospital or Jori's treating physician(s). Jori sought damages for the injuries she suffered related to her infection, and David sought derivative damages.

¶6      The Bielawskis alleged that Barth was responsible for ensuring that the Hospital "was properly cleaned so that patients and staff would not contract a hospital acquired infection" and for ensuring that the Hospital "was free of pathogenic bio-burden, including but not limited to C. difficile." They also alleged

that Barth was "responsible for establishing cleaning protocols that offered the greatest probability of eliminating" pathogens from the Hospital's environment. The Bielawskis further alleged that Barth knew, or should have known, "that the cleaning methods employed by the [H]ospital in January of 2019 would merely reduce bio-burden and would will [sic] leave behind viable organisms that can cause [hospital-acquired] infections."

¶7    The Bielawskis alleged that Barth, as the president and CEO of the Hospital, "was the responsible corporate officer, and in that capacity, he had a duty to direct the staff to take all reasonable steps to eliminate" pathogens from the Hospital's environment.  They also alleged that Barth knew that pathogens, including C. difficile, had been present in the Hospital in the past and, as the CEO, Barth knew, or should have known, "that the hand method of cleaning surfaces, including the floors, was sub-optimal because a substantial percentage of the surfaces are not touched."

¶8    The Bielawskis further alleged that Barth was causally negligent by failing to institute cleaning practices that would eliminate pathogens and biohazards from the Hospital's environment and by failing to "institute and manage staff protocols that would prevent the cross contamination of patients in the [Hospital] in January and February of 2019."  In light of Barth's knowledge that pathogens, such as C. difficile, were present in the Hospital prior to January 2019, the Bielawskis alleged that Barth "failed and neglected to direct that action be taken to eliminate these pathogens from the environment."  In addition, they alleged that Barth was negligent by failing "to properly warn plaintiff Jori, prior to her surgery, of the presence of various known pathogens, including C. difficile in the [Hospital]."

4

¶9      Finally, the Bielawskis alleged that Barth had "no training in the medical sciences," did not "make patient medical decisions in his role as president and CEO," was "not a medical doctor or an RN," and was not otherwise a health care provider.  They also alleged that, as the president and CEO of the Hospital, Barth made administrative decisions, "d[id] not provide patient care[,] and d[id] not have direct access to patient medical records."

¶10     Barth moved to dismiss the Bielawskis' complaint for failure to state a claim against him pursuant to WIS. STAT. § 802.06(2)(a)6., arguing that the Bielawskis' claims were, under the law, medical negligence claims governed by WIS. STAT. ch. 655.  Because medical negligence claims can only be brought against "health care providers" under ch. 655 and because the Bielawskis alleged that Barth was not a "health care provider," Barth contended that the Bielawskis failed to state a viable claim against him.  The Bielawskis opposed the motion, asserting that their claim was one of ordinary common-law negligence, not a medical negligence claim.

¶11     In an oral ruling, the circuit court initially denied Barth's motion to dismiss.  The court concluded that the Bielawskis pled "a plausible theory of liability" and that there was no controlling Wisconsin law stating that a plaintiff could not sue a CEO of a hospital under the circumstances alleged in the Bielawskis' complaint.  Nevertheless, the court noted that it was "troubling … to consider a corporate owner of a hospital being held personally responsible for this."  Barth then filed a petition for leave to appeal the court's decision denying his motion to dismiss, which we denied.

¶12     Barth subsequently moved for reconsideration of the circuit court's denial of his motion to dismiss.  This time, Barth contended that he was immune from suit under WIS. STAT. § 181.0855(1).  The Bielawskis opposed the motion,

arguing that their complaint contained no allegations regarding the Hospital's corporate status. In reply, Barth requested that the court take judicial notice that the Hospital was a nonprofit corporation based on certain publicly available information, and he asserted that this corporate status was "not surprising information since hospitals are typically organized as not-for-profit entities."

¶13 In a written decision, the circuit court granted Barth's motion for reconsideration and granted his motion to dismiss on immunity grounds. The court denied Barth's request to take judicial notice that the Hospital was a nonprofit corporation because, according to the court, the Bielawskis had "effectively concede[d]" that the Hospital was "a corporation" by alleging in their complaint that "as President and CEO, Barth 'was the responsible corporate officer, and in that capacity, he had a duty to direct the staff to take all reasonable steps to eliminate pathogenic bio-burden from the hospital environment.'" The court then concluded that Barth was immune from suit under WIS. STAT. § 181.0855(1) and that none of the exceptions in § 181.0855(1)(a)-(d) applied. As a result of its decision, the court dismissed the Bielawskis' suit.

¶14 The Bielawskis then moved for reconsideration of the circuit court's dismissal order. They argued that the court erred by concluding that the allegations in their complaint conceded that the Hospital was a corporation, including one operating under WIS. STAT. ch. 181. They contended that none of the allegations "even hints at the type of corporation [the Hospital] *may be*, or whether it is actually a corporate entity recognized in Wisconsin." In support of their motion, the Bielawskis filed documents showing that the Hospital was not a corporation organized under WIS. STAT. chs. 180, 181, or 183 but was instead a charitable organization under WIS. STAT. ch. 202. The Bielawskis asked the court to take judicial notice of these documents.

6

¶15 In an oral ruling, the circuit court denied the Bielawskis' motion. The court declined to take judicial notice of either the documents the Bielawskis provided or the publicly available information Barth previously provided. The court noted: "I don't know for sure who Mr. Barth's exact employer is. There [are] now references from defense counsel that there's a consortium or a conglomeration of other corporate entities that may own [the Hospital]." Although the court agreed that the information regarding the Hospital's corporate status was not "clearly in the record," it stood by its reasoning that the Bielawskis' allegations in their complaint conceded that Barth was a corporate officer. The court concluded that nothing "in the record, and the briefs, or arguments that have been made or the facts that I'm aware of … convince[s] me that the results should be that a president of a hospital can be personally liable for what allegedly happened in this case."

¶16 The Bielawskis now appeal.

## DISCUSSION

¶17 This appeal addresses whether the circuit court properly dismissed the Bielawskis' negligence claims on the ground that WIS. STAT. § 181.0855(1) provides Barth, as the president and CEO of the Hospital, with immunity from the Bielawskis' claims that arise solely from his alleged duty to maintain the Hospital in a sufficiently clean state. We also address whether the Bielawskis' claims against Barth were medical malpractice claims governed by WIS. STAT. ch. 655, as opposed to ordinary common-law negligence claims. Whether a complaint states a claim upon which relief can be granted is a question of law that we review independently. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693.

¶18    "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Id.*, ¶19 (citation omitted).  For purposes of our review, "we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." *Id.*  In construing the complaint, we cannot add facts or accept legal conclusions as true. *Id.*  The complaint "must plead facts, which if true, would entitle the plaintiff to relief." *Id.*, ¶21.  The sufficiency of the complaint "depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled." *Id.*, ¶31.

¶19    Given the parties' arguments, we must also interpret and apply WIS. STAT. § 181.0855(1) and provisions within WIS. STAT. ch. 655.  Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*  We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

¶20    We first address whether Barth is immune under WIS. STAT. § 181.0855(1) because, if the circuit court correctly dismissed the Bielawskis' claims on this basis, it would be dispositive of this appeal.  Because we conclude that the court erred by dismissing the Bielawskis' claims on immunity grounds at this stage of the proceedings, we also address Barth's alternative ground to affirm the circuit court.  As the prevailing party in this case, Barth may raise in his response brief any argument that would provide an alternative ground to affirm the court without the need for a cross-appeal. *See B&D Contractors, Inc. v. Arwin Window*

8

*Sys., Inc.*, 2006 WI App 123, ¶4 n.3, 294 Wis. 2d 378, 718 N.W.2d 256 (citing *State v. Alles*, 106 Wis. 2d 368, 391, 316 N.W.2d 378 (1982)). Thus, we address Barth's contention that the Bielawskis' claims "for injuries from a hospital-acquired infection" constitute claims for medical negligence that are governed by WIS. STAT. ch. 655, which would absolve Barth from any liability because it is undisputed that he is not "a health care provider" who is subject to suit under that chapter.

## I. Barth's Immunity Under WIS. STAT. § 181.0855(1)

¶21 The Bielawskis argue that Barth cannot be immune from suit under WIS. STAT. § 181.0855(1) because their complaint contains no allegation that the Hospital is a corporation organized under WIS. STAT. ch. 181. Separately, the Bielawskis also contend that the circuit court interpreted the scope of immunity under the statute too broadly and immunity would not apply even if the Hospital were a ch. 181 nonstock corporation. In particular, they interpret § 181.0855(1) as "provid[ing] protection to directors and officers from suits for a breach of or failure to perform *a duty solely owed to the corporation*." In other words, the Bielawskis contend that § 181.0855(1) immunizes directors or officers for breaching, or failing to perform, duties owed only to the corporation and never for duties owed to third parties.

¶22 While we agree with the Bielawskis that their complaint does not allege or otherwise establish that the Hospital is, in fact, a corporation organized under WIS. STAT. ch. 181, we reject their contention that WIS. STAT. § 181.0855(1) only protects officers from suits for breaching, or failing to perform, duties owed to the corporation. Because the Bielawskis are correct in the first respect, the circuit court erred by dismissing their claims at this time.

¶23    WISCONSIN STAT. § 181.0855(1) provides that

> a director or officer is not liable to the corporation, its members or creditors, or any person asserting rights on behalf of the corporation, its members or creditors, or any other person for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director or officer, unless the person asserting liability proves that the breach or failure to perform constitutes any of the [exceptions in § 181.0855(1)(a)-(d)].

The term "corporation," as used in WIS. STAT. ch. 181, means "a nonstock corporation, including a nonprofit corporation, that is incorporated under or becomes subject to [ch. 181]." WIS. STAT. § 181.0103(5).

¶24    The Bielawskis are correct that their complaint contains no allegation regarding the Hospital's particular corporate status. The extent of the allegations related to the Hospital's corporate status includes those alleging that Barth was the president and CEO of the Hospital, that Barth was "the responsible corporate officer," and that Barth made administrative decisions as president and CEO of the Hospital. At most, these allegations show that Barth was a director or officer of *a* corporate entity, but not *what type* of corporation.

¶25    More importantly, the Bielawskis' complaint does not allege that the Hospital is a nonstock or nonprofit corporation organized under WIS. STAT. ch. 181. *See* WIS. STAT. § 181.0103(5). Nor does the complaint allege that the Hospital is "a corporation that does not make distributions" or "a corporation without capital stock." *See* § 181.0103(17), (18) (defining nonprofit and nonstock corporations, respectively). It makes no difference to our analysis that the Bielawskis never disputed Barth's contention that "[h]ospitals are typically nonstock, nonprofit corporations." Our review is limited to the allegations in the Bielawskis' complaint,

10

and, in reviewing the complaint, we cannot add the alleged fact that hospitals are typically nonstock, nonprofit corporations. *See* ***Data Key Partners***, 356 Wis. 2d 665, ¶19. Because our review is limited to the allegations in the Bielawskis' complaint, those allegations are insufficient to establish that Barth was a director or officer of a nonstock corporation or that the Hospital was a nonstock corporation organized under ch. 181.

¶26 For purposes of applying WIS. STAT. § 181.0855(1), it is not sufficient that Barth is alleged to be—and undisputedly is—the president and CEO of a hospital that is *a* corporation. The hospital must be a particular type of corporation. For this reason, we conclude that the circuit court erred by dismissing the Bielawskis' claims, at least at this stage of the proceedings, on the ground that Barth was immune under § 181.0855(1).

¶27 We reject, however, the Bielawskis' separate argument that the circuit court misinterpreted the scope of immunity under WIS. STAT. § 181.0855(1). We read § 181.0855(1) as protecting directors or officers of nonstock corporations from liability to the corporation *and to third parties* for conduct that results solely from their status as directors or officers of the corporation. The exceptions in § 181.0855(1)(a)-(d), however, recognize that directors or officers can be liable for certain actions regardless of whether they are acting pursuant to their status as officers or directors of the nonstock corporation. Under those exceptions, a director or officer of a nonstock corporation is not immune from liability when his or her conduct constitutes the following: "[a] willful failure to deal fairly with the corporation or its members in connection with a matter in which the director or officer has a material conflict of interest"; "[a] violation of criminal law, unless the director or officer had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful"; "[a]

11

transaction from which the director or officer derived an improper personal profit or benefit"; or "[w]illful misconduct." Sec. 181.0855(1)(a)-(d).

¶28    The above statutory language cannot be read to provide immunity only for breaching, or failing to perform, a duty owed solely to the corporation, as the Bielawskis contend.  And, to our knowledge, WIS. STAT. § 181.0855(1) has never been interpreted in a citable Wisconsin case to be so limited.  Rather, in addition to the duties owed to the corporation, § 181.0855(1) plainly recognizes that directors or officers owe a duty to the corporation's members or creditors, to persons asserting rights on behalf of either the corporation or its members or creditors, and, most importantly to this case, to *any other person*.  If any of those third parties seek to hold a corporate officer of a nonstock corporation liable for a breach of, or failure to perform, a duty resulting solely from his or her status as a corporate officer, § 181.0855(1) protects that corporate officer, subject to the exceptions listed therein.

¶29    Our interpretation of WIS. STAT. § 181.0855(1) is consistent with our supreme court's interpretation of the statute in ***Benjamin Plumbing, Inc. v. Barnes***, 162 Wis. 2d 837, 470 N.W.2d 888 (1991),[3] a case that both the Bielawskis and Barth cite in support of their arguments regarding Barth's immunity.  In that case, the director of a nonprofit corporation only partially disclosed the corporation's status when contracting on its behalf with the plaintiff for services.  *Id.* at 842-43.  The director had negotiated personally with the plaintiff.  *Id.* at 843-44.  When the plaintiff did not receive payment for its services, it sued the director, two other officers of the corporation, and the corporation.  *Id.* at 845.  The supreme court held

---

[3] In ***Benjamin Plumbing, Inc. v. Barnes***, 162 Wis. 2d 837, 857, 470 N.W.2d 888 (1991), our supreme court interpreted a previous version of WIS. STAT. § 181.0855, which was numbered as WIS. STAT. § 181.287 (1991-92).  The statute was renumbered as § 181.0855 in 1997.  *See* 1997 Wis. Act 79, § 48.

12

that the director was liable as a party to the contract under common-law agency because he was "an agent of a partially disclosed principal in circumstances where he never, at or before the execution of the contract, assumed the burden of giving notice of his principal's corporate status." *Id.* at 856, 859-60.

¶30     The supreme court also concluded that the director was not statutorily immune from contractual liability because his liability was based on "his position as an agent to a partially disclosed corporate principal" and not based on "his status as a director" of the corporation.[4] *Id.* at 857.  In reaching this conclusion, the court interpreted WIS. STAT. § 181.0855(1) as granting immunity to directors and officers of a nonstock corporation when their "liability related solely to [their] status" as corporate officers.  *See Benjamin Plumbing*, 162 Wis. 2d at 857-59.  To support its interpretation, the court compared the statutory provisions regarding director and officer liability with respect to for-profit and nonprofit corporations.  *Id.* at 858.  The court explained that the latter statute's legislative history suggested "that directors and officers of nonprofit corporations were granted broader immunity than their for-profit counterparts because of their special organizational purposes."  *Id.* at 858 & n.14.  Specifically, the court pointed to the statute's Legislative Council's note, which states in part:

> As it applies to corporations organized under [WIS. STAT.] ch. 181 (nonprofit corporations), the provision is expanded to include liability to creditors and to 3rd parties generally, in addition to liability to the corporation, the corporation's members, or any person asserting rights on their behalf. The special committee concluded that, given the organization

---

[4] In a footnote, our supreme court noted the court of appeals' determination that the other corporate officers the plaintiff had sued "never had any dealings with [the plaintiff] and accordingly *were* 'shielded from personal liability by reason of their status as corporate officers.'" *Benjamin Plumbing*, 162 Wis. 2d at 846 n.6 (emphasis added; citation omitted).  The plaintiff did not challenge this determination in the supreme court, but the court noted that the two other corporate officers "were not signator[ies] to the contract." *Id.*

and purposes of nonprofit corporations, additional statutory protection from personal liability should be extended to directors and officers of such corporations.

*Benjamin Plumbing*, 162 Wis. 2d at 858 n.14 (citation omitted).

¶31     Despite the broader protections for directors and officers of nonprofit corporations, our supreme court determined that, based on the statutory language and the contract claim at issue, those protections did not extend to the particular director because his liability "as an agent for a partially disclosed corporate principal was not solely dependent on his status as a director" of the corporation. *Id.* at 859. Thus, although factually distinct from this case, *Benjamin Plumbing* supports our interpretation of WIS. STAT. § 181.0855(1) as protecting corporate officers from liability to third parties for conduct resulting solely from the officers' corporate status. The court's discussion of the statute's legislative history further supports the statute's recognition of immunity for a director or officer's breach of, or failure to perform, a duty not only to the corporation, but to third parties as well.

¶32     Contrary to the Bielawskis' arguments, such an interpretation of WIS. STAT. § 181.0855(1) does not immunize officers and directors of nonstock corporations from all of their common-law obligations to avoid acting negligently in a way that harms others. In some situations, a corporate officer may be liable for negligent acts committed in the scope of his or her duties. *See Casper v. American Int'l S. Ins. Co.*, 2011 WI 81, ¶¶82-84, 90, 105, 336 Wis. 2d 267, 800 N.W.2d 880 (noting the general proposition that a corporate officer "is personally responsible for his [or her] own tortious conduct" in situations "where a corporate officer's personal negligence would be treated the same as any other" individual's negligence (citation omitted)). In other words, § 181.0855(1) does not immunize corporate officers for breaching, or failing to perform, a duty of care that does not result solely

14

from their status as corporate officers. Nor does it immunize corporate officers for breaching a duty that results from their status as corporate officers but is excepted in § 181.0855(1)(a)-(d).

¶33     To illustrate, and as relevant to this case, WIS. STAT. § 181.0855(1) provides immunity to the president (or CEO) of a hospital, organized as a nonstock corporation under WIS. STAT. ch. 181, for failing to implement policies and procedures that keep the hospital in a sufficiently clean state. Immunity exists precisely because it is only due to the president's status as the president of the hospital that he or she is responsible for implementing those policies and procedures as part of an overall obligation of the hospital to keep the facility reasonably clean. In this scenario, the president's liability results solely from a breach of, or failure to perform, a duty arising from his or her status as president of the hospital.

¶34     If, however, that same president were to be driving his or her car in the hospital's parking lot and hit a patient who was walking, WIS. STAT. § 181.0855(1) would not provide immunity for the hospital's president because that conduct is unrelated to his or her status or duties as the hospital's president. In this scenario, the president's liability does not result from a breach of, or failure to perform, a duty arising solely from his or her status as the president of the hospital, but rather a breach of his or her duty of ordinary care while driving a vehicle. *See Casper*, 336 Wis. 2d 267, ¶¶90, 105.

¶35     To further explain the nature and reach of immunity under WIS. STAT. § 181.0855(1), at least as relevant to the parties' arguments in this case, one can posit another scenario. If the CEO of a hospital, organized as a nonstock corporation under WIS. STAT. ch. 181, were to intentionally administer a poisonous liquid to a patient that caused him or her to become ill, then the CEO would not be immune

from personal liability. Rather, and at a minimum, the willful misconduct exception to immunity in § 181.0855(1)(d) would apply.

¶36 Although the Bielawskis contend that Jori's injuries stemmed from a duty of care that Barth owed them as a separate common-law duty, unrelated to his status as the Hospital's president and CEO and unprotected by WIS. STAT. § 181.0855(1), the Bielawskis' allegations in their own complaint belie their premise. All of the Bielawskis' allegations of negligence are plainly based on breaches of a duty of care that resulted solely from Barth's status as the president and CEO of the Hospital.[5] Indeed, the majority of the allegations in the Bielawskis' complaint expressly relate to Barth's claimed duties and responsibilities as president

---

[5] Based on materially different facts, we recently reached the opposite conclusion in *Garrett v. Ocean View Swimming Pool Services, LLC*, No. 2023AP2000, slip op. recommended for publication (WI App Jan. 2, 2025). In that case, the plaintiff sued a limited liability corporation (LLC) and its member-owner, alleging that both entities had negligently maintained the plaintiff's pool. *Id.*, ¶2. Just as Barth relies on the immunity statute for nonstock corporations, the LLC and the member-owner in *Garrett* relied on WIS. STAT. § 183.0304(1) to argue that the member-owner could not be held personally liable for negligently performing the pool's maintenance because the statute "preserves the liability of a member of an LLC for conduct *other than as a member or manager*." *See Garrett*, No. 2023AP2000, ¶¶12-13. Section 183.0304(1) provides that an LLC's debt, obligation, or other liability "is solely the debt, obligation, or other liability of the company" and an LLC's member is not personally liable for "a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager." Sec. 183.0304(1).

Although we rejected the LLC and the member-owner's argument for being insufficiently developed, we noted that, based on the language in WIS. STAT. § 183.0304(1), the plaintiff was not seeking to hold the member-owner personally liable for the liability of the LLC. *Garrett*, No. 2023AP2000, ¶13. Rather, the plaintiff sought to hold the member-owner liable based on how the member-owner personally performed the pool maintenance, which was "not founded at all— much less 'solely'—upon [the member-owner] 'being or acting as a member or manager' of [the LLC]." *Id.* (quoting § 183.0304(1)). That is, the plaintiff sought to hold the member-owner personally liable for the member-owner's own actions in performing the pool maintenance. Thus, the member-owner could be held personally liable because the conduct for which the plaintiff sought to hold the member-owner personally liable was not due to the member-owner's status as a member or manager of an LLC and, therefore, was unprotected under § 183.0304(1).

Here, in contrast, the Bielawskis seek to hold Barth personally liable for conduct that *did* result solely from his status as the Hospital's president and CEO and, thereby, Barth is protected under WIS. STAT. § 181.0855(1).

and CEO of the Hospital. These allegations include Barth's responsibility for ensuring that the Hospital was properly cleaned to prevent the risk of contracting a hospital-acquired infection, Barth's responsibility for "establishing cleaning protocols that offered the greatest probability of eliminating" pathogens from the Hospital's environment, Barth's "duty to direct staff to take all reasonable steps to eliminate" pathogens from the hospital environment, and Barth's failure to institute appropriate cleaning practices to eliminate pathogens from the hospital environment. None of the allegations in the Bielawskis' complaint relate to a duty of care that does not arise solely from Barth's status as the Hospital's president and CEO. Nor are any of the allegations relevant to any of the exceptions set forth in § 181.0855(1)(a)-(d).

¶37 In sum, the Bielawskis' claims against Barth would have been properly dismissed under WIS. STAT. § 181.0855(1) *if* their complaint had alleged that the Hospital was a nonstock corporation organized under WIS. STAT. ch. 181. Although we conclude that the complaint did not do so, we reject the Bielawskis' argument that even if the Hospital were organized under ch. 181, § 181.0855(1) would still not apply.

## II. The Bielawskis' Claims Against Barth and the Application of WIS. STAT. ch. 655

¶38 Because we conclude that the circuit court erred by dismissing the Bielawskis' claims on immunity grounds, we turn to Barth's alternative argument that the court erred by initially denying his motion to dismiss, in which Barth asserted that the Bielawskis' complaint actually states medical negligence claims, which are governed by WIS. STAT. ch. 655. Citing ch. 655 and case law from other jurisdictions, Barth contends that ch. 655 "mandates that the Bielawskis' claims be treated the same as other jurisdictions treat claims involving hospital-acquired

17

infections: as claims for medical negligence." In response, the Bielawskis argue that the conduct for which they seek to hold Barth liable—namely, his failing to maintain the Hospital in a sufficiently clean state—does not constitute a "medical service" that would be governed by ch. 655. With one exception, we agree with the Bielawskis.

¶39 WISCONSIN STAT. ch. 655 contains the "'exclusive procedure and remedy for medical malpractice in Wisconsin' against health care providers, as that term is defined in WIS. STAT. § 655.001(8), and their employees." *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶64, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted); *see also* WIS. STAT. § 655.007 (stating that claims or derivative claims "for injury or death on account of malpractice" are subject to ch. 655); WIS. STAT. § 655.005(1) (stating that claims or derivative claims against health care providers or employees of health care providers "for damages for bodily injury or death due to acts or omissions of the employee of the health care provider acting within the scope of his or her employment and providing health care services" are subject to ch. 655). Health care providers expressly include physicians, nurse anesthetists, corporations and partnerships organized and operated to provide the services of physicians and nurse anesthetists, and hospitals. WIS. STAT. §§ 655.001(8), 655.002(1)(a)-(e), (h). Here, it is undisputed that Barth is not a health care provider under ch. 655.

¶40 Importantly, WIS. STAT. ch. 655 applies "only to negligent medical acts or decisions made in the course of rendering professional medical care." *McEvoy v. Group Health Coop. of Eau Claire*, 213 Wis. 2d 507, 530, 570 N.W.2d 397 (1997). It does not preclude a cause of action that is *not* based "on an improper medical action or decision resulting from negligence." *See id.* at 530-31. For example, our supreme court has concluded that ch. 655 did not preclude a plaintiff's

bad faith claim against a health maintenance organization (HMO)—which was both a health care provider and an insurer—for denying her coverage for her treatment because the claim was based "on a 'breach of duty imposed as a consequence of the relationship established by contract,' and not on an improper medical action or decision resulting from negligence." *McEvoy*, 213 Wis. 2d at 514, 516, 531 (citation omitted). Similarly, the court has concluded that ch. 655 is inapplicable to a defendant's third-party claim against a physician when that claim "arises from an action upon a contract to recover fees for medical services in which the appropriateness of these services is disputed, and where no bodily injury resulting from the doctor's action is alleged." *Northwest Gen. Hosp. v. Yee*, 115 Wis. 2d 59, 67, 339 N.W.2d 583 (1983). As seen in these examples, ch. 655 does not govern claims that are based on something other than a health care provider's negligent medical acts or decisions related to patient care.

¶41 At this stage of the proceedings, the Bielawskis' allegations are not governed by WIS. STAT. ch. 655 because the allegations are not based on either a negligent medical act that occurred during Jori's surgical procedure or any decisions made by the physician(s) who treated Jori during her stay at the Hospital. Rather, their allegations are based only on Barth's purported duty to maintain the Hospital in a sufficiently clean state and on Barth's claimed failure to institute cleaning policies and procedures to eliminate pathogens from the Hospital environment and "prevent the cross contamination of patients." These allegations are based on a breach of Barth's duty of ordinary care to those who enter the Hospital. They are not based on any medical acts, which Barth does not perform, or based on decisions by physicians, which Barth undisputedly is not. Thus, the Bielawskis' allegations do not raise a medical negligence claim against Barth, but rather they raise an ordinary negligence claim regarding Barth's breach of his duty of care—namely, to

maintain a sufficiently clean hospital by failing to establish appropriate cleaning policies and procedures.

¶42 The cases from other jurisdictions that Barth cites in support of his contention that the Bielawskis' claims are medical negligence claims do not compel a different conclusion. Those cases address medical negligence claims brought against health care providers (hospitals and physicians), relate to the rendering of medical care, and address infections acquired during medical procedures. *See Young v. Kennedy*, 429 S.W.3d 536, 538 & n.1, 541 (Tenn. Ct. App. 2013) (wrongful death claim based on medical malpractice against hospital and physician who treated plaintiff's husband for a hospital-acquired infection); *Vinlarek v. Cane*, 691 S.W.2d 108, 108 (Tex. App. 1985) (medical malpractice claim against physician for negligent acts in treating an infection the patient acquired after oral surgery); *Elswick v. Nichols*, 144 F. Supp. 2d 758, 760 (E.D. Ky. 2001) (medical malpractice claim against hospital and physician for an infection that the patient allegedly acquired during knee surgery); *Gahm v. Thomas Jefferson Univ. Hosp.*, No. 94-2050, 2000 WL 233247, at *1 (E.D. Penn. Feb. 29, 2000) (medical malpractice claim against hospital and physicians for an infection that the patient allegedly acquired during a spinal surgery). The Bielawskis' complaint does not allege claims against health care providers, does not relate to the rendering of medical care, and does not state—or even suggest—that Jori contracted her infection during her surgery or any related medical procedures.

¶43 Furthermore, Wisconsin courts have not addressed whether WIS. STAT. ch. 655 governs a patient's claim for an injury arising out of a general hospital-acquired infection. Barth acknowledges that Wisconsin courts have not addressed whether the Bielawskis' claim is governed by ch. 655, but he argues that "courts implicitly recognize that to be the case," citing *Braverman v. Columbia*

*Hospital, Inc.*, 2001 WI App 106, 244 Wis. 2d 98, 629 N.W.2d 66. In ***Braverman***, the patient sued the hospital for medical negligence because she contracted a hospital-acquired infection after undergoing surgery. *Id.*, ¶¶4, 8. The issues on appeal, however, were related to whether the patient was entitled to discovery of certain hospital records. *Id.*, ¶¶1-2. ***Braverman*** did not address ch. 655 or whether the patient's claim was governed by it.[6]

¶44 Even if ***Braverman*** stands for an implicit recognition that WIS. STAT. ch. 655 governs a patient's claim for an injury arising out of a hospital-acquired infection, that notion would still not bring the Bielawskis' allegations against Barth into the realm of medical negligence. The patient's claim in ***Braverman*** was brought against a health care provider—i.e., the hospital itself—and was based on the rendering of medical care. That context is much unlike the Bielawskis' claims, which are brought against a hospital's president and CEO—who, again, is not a health care provider under ch. 655—and are based on generally maintaining a sufficiently clean hospital under appropriate policies and procedures. Barth cannot avail himself of ch. 655 simply by being the president and CEO of an entity that itself is subject to that chapter. *See **Andruss v. Divine Savior Healthcare, Inc.**,*

---

[6] Similarly, ***Shibilski v. St. Joseph's Hospital of Marshfield, Inc.***, 83 Wis. 2d 459, 461-62, 266 N.W.2d 264 (1978), also cited by Barth, addressed discovery issues related to a wrongful death claim that the plaintiff brought against a hospital after the plaintiff's wife died in a fire that started in her hospital room in the hospital's psychiatric ward. Among other things, the plaintiff claimed that the hospital was negligent by failing to keep his wife under constant supervision, by failing "to train and instruct hospital personnel in handling safety and emergency situations," and by failing "to establish rules and regulations for dealing with" psychiatric ward patients. *Id.* at 461.

Our supreme court ultimately held that the hospital's rules and regulations were discoverable, that hospital committee records and reports were not privileged, and that the attorney work product privilege did not apply. *Id.* at 471. It did not address whether the plaintiff's claims were governed by WIS. STAT. ch. 655. Contrary to Barth's contention, it did not recognize that the allegations against a president or CEO of a hospital relating to maintaining a hospital in a sufficiently clean state "implicate the alleged acts or omissions of health care providers."

2022 WI 27, ¶¶36, 42, 401 Wis. 2d 368, 973 N.W.2d 435 (concluding that the defendant's community-based residential facilities were not governed by ch. 655 even though they shared common corporate ownership with the defendant's hospitals and nursing homes, which were covered by ch. 655). This conclusion is especially true when the allegations are unrelated to any negligent medical act that occurred during Jori's surgery or to any decisions rendered by her treating physician(s).

¶45 However, we agree with Barth that, as an exception to the foregoing analysis, the Bielawskis' claim that Barth failed to warn Jori about the risk of contracting an infection must be stated as a medical negligence claim because it relates to the benefits and risks of treatment under the informed consent statute— WIS. STAT. § 448.30. Under that statute, "[a]ny physician who treats a patient shall inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments." *Id.* A patient's claim for a failure to inform or warn is "treated under the law as a separate and distinct form of malpractice." *Hannemann v. Boyson*, 2005 WI 94, ¶40, 282 Wis. 2d 664, 698 N.W.2d 714.

¶46 Here, the Bielawskis alleged that Barth knew that pathogens had been present in the Hospital in the past. In light of this knowledge, the Bielawskis alleged that Barth was negligent by failing to warn Jori, before her surgery, of the presence of pathogens in the Hospital. These allegations necessarily relate to the "benefits and risks" of treatment under WIS. STAT. § 448.30, which is a duty that falls only on the treating physician. *See id.* As already established, Barth was not Jori's treating physician and, undisputedly, is not a health care provider that is subject to WIS. STAT. ch. 655. Thus, to the extent that the Bielawskis allege a general claim for a failure to warn Jori of the risk of contracting an infection while she was being

treated within the Hospital, that claim is subject to ch. 655 and was properly dismissed.

¶47 Although the Bielawskis consistently argue that their claims are based on ordinary, common-law negligence, their complaint contains no allegation that would have imposed on Barth a duty to warn Jori of the risk of contracting an infection. In Wisconsin, "everyone has a duty to act with reasonable and ordinary care under the circumstances." *Hornback v. Archdiocese of Milwaukee*, 2008 WI 98, ¶21, 313 Wis. 2d 294, 752 N.W.2d 862. "Ordinary care involves the concept of foreseeability, in that a reasonable person exercising ordinary care would have foreseen injury as a consequence of his [or her] act." *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶30, 291 Wis. 2d 283, 717 N.W.2d 17. "[W]hat is within the duty of ordinary care depends on the circumstances under which the claimed duty arises. For example, what is comprised within ordinary care may depend on the relationship between the parties or whether the alleged tortfeasor assumed a special role in regard to the injured party." *Id.*, ¶32. Here, the Bielawskis do not allege any such special relationship between themselves and Barth under which any ordinary, common-law duty to warn would arise.

¶48 In sum, except for their claim alleging a failure to warn, we conclude that the Bielawskis' claims against Barth are not those of medical negligence that are governed by WIS. STAT. ch. 655. Those claims remain viable as long as it is not later determined that Barth is immune under WIS. STAT. § 181.0855(1).

*By the Court.*—Order reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.